OLIVER and wife vs. THE TOWN OF LA VALLE.

HIGHWAY: NEGLIGENCE: CONSEQUENTIAL DAMAGES. (1) *Question of contributory negligence, for the jury.* (2, 3) *Damages to female plaintiff by reason of a miscarriage brought on by her fright and exertions in consequence of an accident upon a defective highway, not too remote to be ground of action. Instructions.*

1. In an action for injuries to the female plaintiff alleged to have been caused by a defective bridge constituting a part of a highway in the defendant town, it appeared that horses driven by said plaintiff's brother broke through the bridge in such a manner that the brother could not extricate one of them; and that said plaintiff, at her brother's request, went for help; and the plaintiff's evidence tended to show that her exertions in going for help afterwards brought upon her a miscarriage, damages for which are sought in the action. *Held*, that the question whether the injuries were caused by negligence on her part in making such exertions, was *for the jury*, and the court properly refused a nonsuit.

2. The court having instructed the jury that if said plaintiff's negligence contributed to the injury, the town was not liable, and that if her negligence or imprudence increased the injury, then the town, if liable at all, was not liable for the enhanced damages, there was no error in its refusal to further charge that if the injuries complained of were caused by said plaintiff's exertions in going for help, or if those exertions contributed to produce them, there could be no recovery; or that, if said plaintiff was not aware of her pregnancy at the time, yet if her exertions in going for help contributed to produce the miscarriage, her ignorance did not render the town any more liable.

3. If there was no contributory negligence, this court cannot say that the damages accruing to the female plaintiff by reason of her miscarriage are too *remote* to be a ground of action.

APPEAL from the Circuit Court for *Sauk* County.

Action by a husband and wife to recover for injuries to the latter alleged to have been caused by a defective bridge constituting part of a public highway in the defendant town. Answer, a general denial, with allegations of negligence on the part of the plaintiff.

Oliver and wife vs. The Town of La Valle. .

From the testimony taken on the trial, it appeared that the female plaintiff was riding with her brother in a lumber wagon, on their way to La Valle, when they came to the bridge in question, and in driving over it a part of the floor gave way, letting the hind feet of the horses through. She then testified: " I got out of the wagon, very much frightened, and felt safer on the ground. I asked my brother what I could do. He said, ' Go for help.' I started on a run, and went so for a short distance. He called, and I went back. He said, ' If you will take hold and help, we can save one of the horses.' I said, ' What shall I do?' He said, ' You see the nigh horse is not in; unhitch the tugs;' and I did so. He could not do anything, because he was holding up the other horse by the head. He told me to unhitch the cross lines. I was so frightened, I could not. I didn't seem to have any use of my right hand. I was all of a tremble. He told me to keep cool; if I was frightened, I could not do any good. He reached over and helped me, and we got it unhitched, and I led the horse off the bridge. I then went and unhitched a tug off the other horse. He then told me to come forward and hold the horse by the head, and I did. The horse made a plunge, and jerked the lines out of my hands. I was holding by the check lines. He said, ' We will have to have more help; go as quick as you can;' and I did. When I got up to the top of the hill, I was almost used up. I had been running as fast as I could; as though I was running for my life. I got to Mr. Vant's. Mrs. Vant told me I had better go in and lie down. I said I couldn't until I saw how they got along, and I went back. I had a crick in my side. As I came up I heard my brother say something about taking hold of the wagon tongue and pushing it back. I started to help, but found I was so weak I had to sit down. That was all I did. I sat there until they got fixed up, and the horses hitched in the wagon. I then went in the wagon to father's.'"

It further appeared that within about an hour after reaching

her father's house she had a miscarriage, the appearance of the foetus indicating that she was between three or four months advanced in pregnancy.

In regard to her knowledge of her condition at the time of the accident, she testified: "I can't tell how long I had been pregnant, because I was different from what I had been before. I had suspected that I was in a family way, and then again thought I was not. At the bridge I did not know I was in a family way. I had symptoms that I was. * * I was not thinking anything about it at the bridge. I was thinking of something else."

The testimony of physicians sworn upon the trial was, that sudden emotions, fright, and violent exertions after fright, are exciting causes of miscarriage.

At the close of plaintiff's testimony, defendant moved for a nonsuit upon the grounds stated in the opinion; but the motion was denied.

The substance of certain instructions asked by the defendant, and refused, appears in the opinion. Verdict and judgment for plaintiffs, for $750 damages. From this judgment defendant appealed.

*C. C. Remington*, for appellant, contended that there was a total want of proof of the charge that the damages sustained by the plaintiff were caused by the defective bridge; that the evidence clearly showed that her injuries were caused by her own indiscretion and violent exertions after the accident had happened; that the case differed from *Houfe v. Town of Fulton*, 29 Wis., 296, in which a town was held liable for injuries resulting from two independent proximate causes, for one of which only the town was responsible, in that the other contributing cause here was not a *pure accident* cotemporaneous with the accident happening from the defective highway, but the voluntary and negligent act of the party injured; and that the damages claimed for the plaintiff's miscarriage were too remote, being the immediate effect of an intervening proximate

cause other than the defective bridge, and were not such as might reasonably be expected under ordinary circumstances to result from such defect.    1 Greenl. Ev., § 256 ; *Rigby v. Hewitt,* 5 Exch., 240 ; *Ripley v. Railway Pass. Assurance Co.,* 2 Big. Ins. Cases, 738 ; *Prov. Life Ins. Co. v. Martin,* 32 Md., 310 ; *Patten v. C. & N. W. R'y Co.,* 32 Wis., 539, note ; *Insurance Co. v. Tweed,* 7 Wall., 45 ; *Kellogg v. C. & N. W. R'y Co.,* 26 Wis., 284.

*J. W. Lusk,* for respondents, upon the question of contributory negligence, cited *Lund v. Inhabitants of Tyngsboro,* 11 Cush., 563 ; 9 Vt., 411 ; *Patten v. C. & N. W. R'y Co.,* 32 Wis., 524 ; *Houfe v. Town of Fulton,* 29 id., 296 ; *Kelley v. Fond du Lac,* 31 id., 188 ; and he argued that the question of the amount of damages sustained by plaintiff in consequence of the defect in the highway, was purely one for the jury ; and that the question of plaintiff's contributory negligence had been fairly submitted to them, and their conclusion was final.

COLE, J.    There is no question in this case as to the insufficiency of the bridge where the accident happened.    The testimony is conclusive that it was out of repair, and constituted a defect in the highway.    In determining the liability of the town, therefore, but two questions are raised by the exceptions : 1st.  Was the plaintiff *Mrs. Oliver* guilty of contributory negligence ?    2d.  Were the damages too remote, or were they the natural and direct consequences of the failure of the town to keep the bridge in proper repair ?

On the motion for a nonsuit, the defendant claimed that the evidence clearly showed that whatever injuries *Mrs. Oliver* sustained were occasioned, not by reason of the want of repair of the bridge, but by her own act in going up the hill in the manner detailed by her in her testimony ; and that as her own negligence and imprudence contributed to the injury complaimed of, there could be no recovery.    The court, as we think, very properly refused to withdraw the case from the

jury. The court, on submitting the cause, was requested to charge, amongst other things, first, that if the injuries complained of were caused by the exertions of *Mrs. Oliver* in going for help, or, third, if such exertions contributed to produce such injuries, there could be no recovery; fifth, that if *Mrs. Oliver* was pregnant at the time of the accident, but was not aware of her condition, yet if her exertion in going for help contributed to produce the miscarriage, her ignorance of her condition did not render the town any more liable on that account. The court refused to so instruct, but did direct the jury that if they found from the evidence that the negligence of *Mrs. Oliver* contributed to the injury which she received, the town was not liable; or if they found that her negligence or imprudence had the effect to increase the injuries received by her, then, if the town was liable at all, it was not liable for such enhanced damages; leaving the question to the jury whether under all the circumstances *Mrs. Oliver* did act prudently and cautiously in doing what it appeared she did do.

It seems to us the court fairly submitted the question of *Mrs. Oliver's* want of care and prudence to the jury, whose province it was to determine it. Surely the question whether she was negligent in doing what she did, was not a question of law. She was bound to exercise that care and diligence which persons of ordinary prudence would use under similar circumstances, taking into consideration her sex and condition; and so the court directed the jury. It would have been improper for the court to say that if the evidence satisfied the jury that her exertions in going or running for aid to extricate the horse which had broken through the defective bridge, caused or contributed to produce the miscarriage, then the law imputed negligence on her part. The essence of the requests refused is, that there could be no recovery if the injury complained of were in any way caused by the exertions of *Mrs. Oliver* in doing what she did. This was assuming that these exertions constituted negligence. We should be very

JANUARY TERM, 1875.        597

Oliver and wife vs. The Town of La Valle.

unwilling to say, as a matter of law, that in making these exertions her conduct was imprudent; that she did not act as a woman of ordinary care and diligence would have acted under similar circumstances. It might be quite consistent with a proper degree of care and prudence, for her to make these exertions to obtain help as requested by her brother. At all events, they will not warrant the charge of negligence as a matter of law, even if they did contribute to produce the injury. It appears that she and her brother were riding in a lumber wagon on the highway, and, upon driving on the bridge in a careful manner, the horses broke through with their hind feet. One horse was got out by them, but they were unable to extricate the other, which remained with his hind legs through the bridge. Her brother requested her to go and procure aid as quick as she could; and whatever exertions she made were put forth in running or going for help to extricate the horse, or in her endeavors to assist him. Whether there was anything rash or imprudent in her conduct, or whether she acted with due care and judgment under the circumstances, were questions for the jury.

The second question relates to the remoteness of damages. It is insisted on the part of the town, that the injury sustained by *Mrs. Oliver* is too remote to be attributed to the defect in the bridge.

It was alleged in the complaint, that by reason of the dangerous condition of the bridge and of the horses breaking through it as described, *Mrs. Oliver* was severely and seriously injured in body and mind; that she was greatly frightened, and being delicate and nervous, and about four months advanced in pregnancy, a miscarriage was produced; and that she suffered for a long time great bodily pain, and was unable to attend to her domestic affairs. This miscarriage, and the sickness resulting therefrom, it is claimed, were not the natural and proximate consequence of the insufficiency in the bridge. It seems to us impossible to say, as a proposition of

law, that the failure of the town to keep the bridge in repair was not the direct and proximate cause of the injury. Had the bridge been in repair it is safe to assume the accident would not have happened. When the horses broke through the bridge, *Mrs. Oliver* was greatly frightened, as it was perfectly natural she should be. She immediately jumped from the wagon, and endeavored to assist her brother in extricating the horses, and ran for help; conduct and actions on her part probably justified by the condition in which both persons and animals were in consequence of the failure of the town to perform its duty. What particular act or thing produced the miscarriage, no one was able to tell. The medical witnesses say that sudden fright, violent emotions, jumping from the wagon, would all be exciting causes of miscarriage. Now it is manifest that the fright, the violent emotion, the jumping from the wagon, all resulted directly and necessarily from the accident. But no witness was able to state, and the court could not determine, whether the miscarriage was really produced by one or all of these causes operating, or whether they concurred with *Mrs. Oliver's* subsequent exertions to produce it. But the acts of her body and the condition of her mind were necessary results of the accident; and the accident was caused by the insufficiency of the bridge, for which the town must be held responsible. The evidence does not show that any new cause or force intervened to produce the injury, within the meaning of the authorities. The damages were such as might reasonably be expected to follow an accident happening to a woman in *Mrs. Oliver's* condition. And it seems to us there is no ground for saying that the damages were the remote and not the proximate result of the negligence of the town. It is very certain the injury would not have been sustained but for the defect in the bridge.

For these reasons the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.