Brown and wife vs. The Chicago, Milwaukee & St. Paul R'y Co.

BROWN and wife vs. THE CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY.

*November 30, 1881 — March 14, 1882.*

TORTS: PLEADING: DAMAGES. *(1) Complaint held to go for a tort, and not
for a breach of contract. (2, 3) Rule of damages: Unforeseen conse-
quences. (4) Direct or proximate consequences.*
REVERSAL OF JUDGMENT: *(5) On weight of evidence.*

1. The complaint seeks a recovery for sickness and bodily and mental suffer-
ing of the plaintiff wife, and for mental suffering and expense and
trouble on the part of the plaintiff husband growing out of the sickness
of the wife, alleged to have been caused by the negligence of defendant's
servants in directing plaintiffs to leave a train of passenger cars before
they had reached their destination; and the action is held to be *in tort*,
for the negligence, and not upon the contract of carriage, notwithstand-
ing averments which show a contract relation between the parties, and
that defendant "wholly disregarded its duty in the premises and its
contract and obligations to and with the plaintiffs."

2. While the rule in actions for breach of contract is, that the damages re-
coverable are only such as the parties may reasonably be supposed to
have contemplated as likely to result from such a breach, the general
rule in actions for torts is, that the wrong-doer is liable for all injuries re-
sulting directly from the wrongful act, whether they could or could not
have been foreseen by him.

3. The fact, therefore, that defendant's servants did not know the delicate
state of health of the plaintiff wife at the time of the alleged wrong,
does not relieve defendant from liability for the actual, direct conse-
quences of such wrong.

4. The direct or proximate consequences of a wrongful act are those which
occur without any intervening *independent* cause; and the fact that the
injuries chiefly complained of were caused *immediately* by the act of
plaintiffs in walking from the place where they left the cars to the next
station, will not relieve defendant from liability therefor, where it appears
that plaintiffs' act in so walking was rendered apparently necessary by
defendant's wrongful act, and was not negligent.

5. The evidence in this case of subsequent negligence on plaintiffs' part, con-
tributing to the injury, is not sufficient to warrant this court in reversing
a judgment upon verdict in their favor.

COLE, C. J., and LYON, J., dissent.

APPEAL from the Circuit Court for *Juneau* County.

The pleadings are thus stated by Mr. Justice TAYLOR:

"The cause of action in this case will be best stated by giving a copy of the complaint, which sets forth fully the facts upon which a recovery is sought. After stating the incorporation of the defendant, and alleging that it was a common carrier of passengers in this state, the complaint proceeds as follows: 'That said plaintiffs, on or about the 2d day of October, 1879, desired to go to Mauston, aforesaid, from the said village of Kilbourn City, and for that purpose bought and paid about $2.30 for tickets at Kilbourn City, from the agent of said defendant, to convey said plaintiffs to Mauston and return to Kilbourn City, whereby it became the duty of said defendant, as carrier of passengers, to carry the said plaintiffs from Kilbourn City to Mauston in their passenger train which left Kilbourn City to go to Mauston at about 6:20 P. M. of said day, and to treat said plaintiffs in a respectful manner, and carry them to the proper and usual landing place at Mauston, to wit, the depot of said defendant at said place. That the said defendant wholly disregarded its said duty in the premises, and its contract and obligations to and with said plaintiffs, and, when about three miles east of the depot of the defendant at the said village of Mauston, informed said plaintiffs, by its proper agents and servants, that they had arrived at Mauston, aforesaid, and stopped the train for them to get off. That said plaintiffs, supposing and believing they had arrived at Mauston, as they were informed they had by the defendant's servants, as aforesaid, alighted from the defendant's train, and the train passed on. That after said train had left them, they perceived that they were not at the Mauston depot, and did not know where they were. That it was quite dark. That they supposed and believed that they were near the Mauston depot, and proceeded up the track in the direction of Mauston, as they supposed, expecting in a few moments to arrive at the Mauston depot. That, instead of being near

the Mauston depot, they found afterwards they were not, but, on the contrary, had been carelessly and negligently put off the defendant's train by its servants about three miles east of said depot, apparently in the country; and the plaintiffs knew not otherwise, but supposed and believed that they had got to walk west on the track of the defendant until they came to some station. That, after walking on the track of the defendant about three miles, they came to the said village of Mauston; the said plaintiff, *Mary A. Brown*, being, by reason of said long walk, very tired and exhausted, sick and prostrated, passing the balance of the night in a very restless, uneasy and feverish condition. That previous to the said 2d day of October, 1879, and to leaving Kilbourn City as aforesaid, the said plaintiff *Mary A. Brown* had been a healthy, well and robust person, and at the time of taking said walk was pregnant with child. That, in consequence of being carelessly and negligently put off the cars of the defendant, as aforesaid, and of her said walk, she became sick, ailing and very much enfeebled, and continued getting worse, although using the best of care and medical attendance, until about December 20, 1879, when she lost her child. That for a long time the said plaintiff *Mary A. Brown* was seriously and dangerously ill, so much so that her life was greatly endangered and despaired of, and she had suffered and continued to suffer great pain in body and mind; and that the said plaintiff *Orange Brown*, her husband, suffered personally great anxiety of mind, and was put to great expense and trouble in care, nursing, help and medical attendance and medicines.' The defendant's answer was a general denial only."

Instructions asked by the defendant to the effect that injuries to the wife from her exposure could not be considered in estimating damages, and that, if plaintiffs voluntarily undertook to journey from the point where they were put off to Mauston, no damages could be given for the sickness of the wife and the injury to her, were severally refused. The court

instructed the jury, among other things, that if plaintiffs, before leaving the place at which they got off from the train, "took no steps to find out whether there was a depot building, or any accommodations for them there, but willingly undertook to walk, then no damages could be given for the injuries to *Mrs. Brown;*" and that if, before leaving that vicinity, they knew, or, in the exercise of ordinary caution and prudence, ought to have ascertained, where they were, and, rather than suffer the inconvenience of waiting for another train, undertook to walk to the end of their journey, then defendant was liable only for damages caused by the delay and for the fare paid for the remainder of the journey.

Plaintiffs had a verdict for $2,500; a new trial was refused, and defendant appealed from a judgment entered pursuant to the verdict.

*D. S. Wegg,* for appellant:

The action is for a breach of contract. The complaint sets forth the contract of transportation, and alleges that through the contract the duty of safe transportation was thrown upon the defendant, and that such duty was disregarded. *Orange Bank v. Brown,* 3 Wend., 158; *Wood v. M. & St. P. Railway Co.,* 32 Wis., 398; *Walsh v. C., M. & St. P. Railway Co.,* 42 id., 23. Applying the most liberal rules in favor of treating the allegations in reference to duty as intending a duty cast upon the defendant by the ordinary principles of law, and not one connected with the contract of transportation, it would be a complaint containing language which set out both the custom of the realm and the contract, and would be one *ex delicto quasi ex contractu.* In such case the action is in reality founded upon the contract, and is to be so regarded. *Orange Bank v. Brown, supra.* The damages claimed for the injuries to *Mrs. Brown* cannot, therefore, be recovered here, for they are not such as may fairly be taken to have been contemplated by the parties as the possible result of the breach

of the contract. *Hobbs v. L. & S. W. Railway Co.*, L. R., 10 Q. B., 111; *Walsh v. Railway Co.*, *supra*; *Le Blanche v. L. & N. W. Railway Co.*, L. R., 1 Com. Pl. Div., 286; *S. C.*, 24 Weekly Rep., 396, 808; *I., B. & W. Railway Co. v. Birney*, 71 Ill., 391; *Pullman Palace Car Co. v. Barker*, 4 Col., 344; *Frances v. St. Louis Transfer Co.*, 5 Mo. App., 7; *Vedder v. Hildreth*, 2 Wis., 427; *Brayton v. Chase*, 3 id., 456; *Bradley v. Denton*, id., 557; *Servatius v. Pickel*, 34 id., 299; *Candee v. W. U. Tel. Co.*, id., 471; *Oleson v. Brown*, 41 id., 415; *Ingram v. Rankin*, 47 id., 409; *Giese v. Schultz*, 53 id., 462. But if the action should be considered as one in tort, the same rule as to remoteness of damages would apply. The damages, to be recoverable, must be the natural and proximate consequence of the wrongful act — such as in the ordinary course of things would flow from defendant's conduct. Wood's Mayne on Damages, sec. 52; Sedgwick on Damages, 57 et seq.; Shearm. & Redf. on Negligence, sec. 595; *Phillips v. Dickerson*, 85 Ill., 11; Moak's Underhill on Torts, 16; Addison on Torts, 6; Cooley on Torts, 68; *Sharp v. Powell*, L. R., 7 C. P. Cases, 253; *Williamson v. Grand Trunk Railway Co.*, 17 U. C. C. P., 615; *Allsop v. Allsop*, 5 H. & N., 534; *Lynch v. Knight*, 9 H. L. C., 577; *Waller v. Midland Railway Co.*, L. R., 4 Ireland, 376; *Glover v. L. & S. W. Railway Co.*, L. R., 3 Q. B., 25. 2. Counsel further contended that the plaintiffs were guilty of negligence on the night in question, and that their subsequent neglect to call a physician would prevent the recovery of damages for the abortion, citing *Hassa v. Junger*, 15 Wis., 598; *Eastman v. Sanborn*, 3 Allen, 594; *Stover v. Bluehill*, 51 Me., 439; *Illinois Central R. R. Co. v. McClelland*, 42 Ill., 355.

*J. W. Lusk*, for the respondent, cited Thompson on Carriers of Passengers, 566; *Patten v. C. & N. W. Railway Co.*, 32 Wis., 524; *McMahon v. Field*, Ch. Div., 44 L. T., 175; 23 Alb. L. J., 345; *Williams v. Vanderbilt*, 28 N. Y., 217; *Ward*

*v. Vanderbilt,* 34 How. Pr., 144; *Oliver v. La Valle,* 36 Wis., 592; *Shepard v. Milwaukee Gas Light Co.,* 15 id., 329; *Stewart v. City of Ripon,* 38 id., 591.

The following opinion was filed January 10, 1882:

TAYLOR, J. Upon this appeal the learned counsel for the railway company insisted that the damages claimed for the sickness of the wife, and for her medical attendance and care, are too remote to constitute a cause of action, and that it was error on the part of the court below not to take that part of the case from the jury.

The first position taken by the learned counsel for the appellant is, that the cause of action set out in the plaintiffs' complaint is for a breach of contract, and not an action in tort. Upon this point we cannot agree with the appellant. We think the gravamen of the action is the negligence and carelessness of the appellant's agents and employees in directing the plaintiffs to leave the train before they had arrived at the end of their journey. They did not leave at a place short of their destination knowing that fact, but through the neglect of the appellant's employees they were induced to leave the train short of their journey's end, supposing that they had reached it. It is true, the plaintiffs in their complaint state that they paid their fare and went on board the train as passengers, to be carried from one point to another on the appellant's road, and that by reason of such payment and entry upon that train it became the duty of the appellant to carry them from the point of starting to their destination. These facts are, perhaps, sufficient to constitute a contract on the part of the appellant to safely carry them to their destination. Still, it is necessary in all actions against a carrier of passengers to state facts which show the right of the party to be carried, before he can complain of any breach of duty on the part of the carrier in not conveying them safely, or in not carrying them to their destination. The complaint in this case is not so much that the

plaintiffs were not carried to their destination, but that on the way the appellant's employees carelessly and negligently induced them to quit the train before they arrived at their destination, and that in consequence of such wrong on the part of the appellants they suffered damage. It is the negligence in putting the plaintiffs off the train before the journey was completed, which is complained of, and not a breach of the contract in not carrying them to the end of their journey.

We see no reason for distinguishing this case from the class of cases which hold a railway company liable in tort for an injury done to a passenger, while traveling on a train, caused by collision, the breaking down of a bridge, or any defect in the road or cars. All these matters are a breach of the contract to carry the passenger safely; yet the carrier is held liable in an action of tort, for any injury sustained, based upon the allegation that it was incurred through the carelessness and negligence of the company. All the cases hold that the person injured through the negligence or carelessness of the carrier may proceed either upon contract, alleging the careless or negligent acts of the defendant as a breach of the contract, or he may proceed in tort, making the carelessness and negligence of the company the ground of his right of recovery; and if he proceed for the tort, it becomes necessary on the part of the plaintiff to show that he stands in the relation of a passenger of the carrier, in order to show his right to recover damages for the negligence of the carrier in not discharging his duty in carrying him safely. Where the relation of passenger and carrier exists, the law fixes the duty of the carrier towards the passenger, and any violation of that duty is a wrong; and if injury occurs to the passenger from such wrong, the carrier is responsible and must make good the damage resulting therefrom. *Wood v. Railway Co.*, 32 Wis., 398; *Walsh v. Railway Co.*, 42 Wis., 23; *Craker v. Railway Co.*, 36 Wis., 657–675, and cases cited. In this case we deem it material to determine whether the action is an action for

a tort, or an action for a breach of the contract to carry the plaintiffs to their destination, because we think the rules of damages in the two actions are essentially different. We hold that the action in this case is based· upon the tort of the defendant in negligently and carelessly directing the plaintiffs to leave the cars before they reached their destination.

The plaintiffs claim, and the evidence shows, that they and their child, about seven years old, were directed to leave the cars, by the brakeman, at a place some three miles east of Mauston, being told at the time that it was Mauston, their place of destination. When they left the cars it was night; it was cloudy, and had rained the day before; there was a freight train standing on a side track where they were put off the train; there was no platform, and no lights visible except those on the freight train. Plaintiffs soon ascertained that they were not at Mauston, and did not know where they were. They did not see the station-house, although there was one, but it was hid from their view by the freight train standing on the side track. They supposed they were at a place two miles east, where the train sometimes stopped, but where there was no station-house. They started west on the track towards Mauston, expecting to find a house where they might stop, but did not find one until they came to the bridge, about a mile east of Mauston, and then they thought it easier to go on to Mauston than seek shelter at the house, which was a considerable distance from the track. They went on to Mauston, and arrived there late at night, *Mrs. Brown* quite exhausted from the walk. She was pregnant at the time. She had severe pains during the night, and the pains continued from time to time, and after a few days she commenced flowing. The pains and flowing continued until some time in December, when a miscarriage took place, after which inflammation set in, and for some time she was so sick that she was in imminent danger of dying. The plaintiffs claim that the miscarriage and subsequent sickness were all caused by the

walk *Mrs. Brown* was compelled to take to get from the place where they were left by the train to Mauston.

The important question in the case is, whether the appellant is liable for the injury to *Mrs. Brown*, admitting that it was caused by her walk to Mauston. Whether the sickness of *Mrs. Brown* was caused by the walk to Mauston was an issue in the case, and the jury have found upon the evidence that it was caused by the walk. There is certainly some evidence to sustain this finding of the jury, and their finding is therefore conclusive upon this point. Admitting that the walk caused the miscarriage and sickness of the plaintiff *Mrs. Brown*, it is insisted by the learned counsel for the appellant, that the appellant is not liable for such injury; that it is too remote to be the subject of an action; that the negligence and carelessness of the defendant's employees in putting the plaintiffs off the cars at the place they did, was not the proximate cause of the miscarriage and sickness, and for that reason the appellant company is not liable therefor.

To sustain this position of the learned counsel for the appellant, reliance is placed upon the case of *Walsh v. Railway Co.*, 42 Wis., 23, and it is insisted that there can be no real distinction made between that case and this. Upon a careful examination of that case, it will be seen, we think, that the court did distinguish between an action which was purely an action for a breach of contract, and one in tort. In that case the learned circuit judge charged the jury as follows: "If you find that the failure to return to Madison on the day in question, at the time agreed upon in the contract, was caused directly by orders from the headquarters and principal manager of the railway company, made with the full knowledge that the plaintiff and the other excursionists were ready and waiting to be carried home according to the arrangement made therefor, and made in willful disregard of the rights of the plaintiff and the other excursionists, subordinating their rights to the convenience of the company, when they had the means

·at hand readily to have fulfilled their.duty — in short, that the conduct of the company was willful and oppressive,— then you may give full compensatory, though not punitive, damages, embracing such loss of time, such injury to health, such annoyance and vexation of mind, and such mental distress and sense of wrong, as you find was the immediate result of the misconduct, and must necessarily and reasonably have been expected to arise therefrom to the plaintiffs as one of the excursionists." This instruction was excepted to, and this court held the instruction erroneous, and reversed the judgment for that cause.

The present chief justice, who wrote the opinion in the case, takes special pains to show that the action was based solely upon a breach of contract, and was in no sense an action of tort, and he expressly declares that the rule of damages is not the same where the action is for a breach of contract as for a tort. Upon this point he uses the following language: "It will be seen that the circuit court was requested to charge that the plaintiff was only entitled to recover such damages as naturally and fairly resulted from the breach of contract, but could not recover damages for the disappointment of mind, sense of wrong, or injury to his feelings by reason of such breach. This rule the learned circuit judge disaffirmed, holding ·that if the conduct of the company *was willful and oppressive*, then such injury to health, annoyance and vexation of mind, mental distress and sense of wrong, as were the immediate result of the misconduct and must reasonably have been expected to arise therefrom to the plaintiff, were ·proper matters to be considered in giving compensatory damages. *This was confounding the important distinction, so far as the rule of damages is concerned, between an action in tort and one upon contract.* It was in fact applying to this case the rule which was laid down in *Craker v. Railway Co.*, 36 Wis., 657, in an action for a tort committed by an agent of the company. In the case of wrongs, the jury are permitted

to consider injury to feelings and many other matters which
have no place in questions of damages for a breach of contract."

The chief justice then quotes at large from the case of
*Hobbs v. Railway Co.*, 10 Law Rep. (Q. B.), 111, with ap-
proval. In that case the English court of appeals held,
that when the railway company had neglected or refused to
carry the plaintiffs to their destination, and they were com-
pelled to get out at a station about five miles from it, late at
night, and, being unable to get a conveyance or accommoda-
tion at an inn, they walked home a distance of five miles in
the rain, and the wife caught cold and was sick as a conse-
quence of the walk and exposure, they could not recover for
the injury to the wife. It would seem, from the opinions
given by the learned judges in the *Hobbs Case*, that they
treated the action as an action upon contract, and not an ac-
tion for a tort. All the judges speak of it as an action to
recover for the breach of the contract to carry the plaintiffs
to their destination.

The rule as to what damages may be recovered in actions
for breach of contract, is laid down by this court in the case of
*Candee v. W. U. Tel. Co.*, 34 Wis., 479, cited from *Hadley v.
Baxendale*, 9 Exch., 341, and approved. It is as follows:
" Where two parties have made a contract, which one of them
has broken, the damages which the other ought to receive in
respect of such breach of contract should be either such as
may fairly and substantially be considered as arising natu-
rally — that is, according to the usual course of things — from
such breach of contract itself, or such as may reasonably be
supposed to have been in the contemplation of both parties, at
the time they made the contract, as the probable result of the
breach of it."

The latter part of this rule, as above quoted, would seem to
cover all cases of breach of contract; for it must be presumed
that the parties would reasonably be supposed to have contem-
plated that the party injured by the breach of the contract

would sustain such damages as would fairly and substantially, in the usual course of things, result from such breach. And so it is often said that, in an action for a breach of contract, the damages to be recovered are such as may reasonably be supposed to have been in the contemplation of both parties when they made it. Under this rule, the damages which may be recovered in an action for the breach of a contract are sometimes more remote and far-reaching than those recoverable for a tort.

The case of *Richardson v. Chynoweth*, 26 Wis., 656, is an illustration of the rule. In that case the court say: "In such cases, where the contracting party is advised of the special purpose of the thing to be completed, and of the damage that would naturally accrue from failure to complete it at the specified time, and in view of this expressly stipulates to finish it at a given time, there is no reason why he should not be responsible for such damage as is the direct, natural result of his failure, even though beyond the mere difference between the contract and market price." See *Shepard v. Milwaukee Gas Light Co.*, 15 Wis., 318; *Flick v. Weatherbee*, 20 Wis., 392.

In many cases of breach of contract, the courts have by their decisions established a rule of damages which is applicable to all of a class. In an action for a breach of contract to pay money at a fixed time, the damages are the lawful interest on the money withheld, from the time it was payable to the date of the judgment, unless the contract expressly stipulates for other damages. So, in actions for a breach of a covenant of warranty of title, the damages are limited, ordinarily, to the purchase money paid and interest. In these and other classes of cases, the damages are fixed by arbitrary rules; but still the general rule above stated, that the damages are such as "it may reasonably be supposed to have been contemplated that the party injured by the breach of the contract would sustain," would apply to such cases; for, in contracts of the

classes above mentioned, the parties would enter into them knowing the law fixing the damages for the breach, and so they would be supposed to have contemplated the payment of such damages in a case of breach and no other.

In the case of *Hobbs v. Railway Co.*, *supra*, the learned justices state the rule in case of breach of contract in more concise language. They say: " Such damages are recoverable as a man when making the contract would contemplate would flow from a breach of it." Under this rule it was *held* in the *Hobbs Case*, and by this court in the *Walsh Case*, that in an action for a breach of contract in failing to carry a passenger to his destination, damages could not be recovered for injury to the health, annoyance and vexation of mind and mental distress, on the ground that such damages were not such as the parties making the contract would contemplate as likely to result from its breach.

We are not disposed now to question the correctness of the decision made by this court in the case of *Walsh v. Railway Co.*, *supra*, limited as that case was to an action solely for a breach of contract. In such cases the willfulness of the party in refusing to fulfill the contract does not in any way change the rule of damages. The rule as to the damages in actions upon contract is the same whether the breach be by mistake, pure accident, or inability to perform it, or whether it be willful and malicious. The motives of the party breaking the contract are not to be inquired into. 1 Sedgw. Meas. Dam., 439 et seq., and cases cited.

The rules which limit the damages in actions of tort, so far as any general rules can be established, are in many respects different from those in actions on contract. The general rule is, that the party who commits a trespass or other wrongful act is liable for all the direct injury resulting from such act, although such resulting injury could not have been contemplated as a probable result of the act done. 1 Sedgw. Meas. Dam., 130, note; *Eten v. Luyster*, 60 N. Y., 252; *Hill v.*

*Winsor*, 118 Mass., 251; *Lane v. Atlantic Works*, 111 Mass., 136; *Keenan v. Cavanaugh*, 44 Vt., 268; *Little v. Railroad Corp.*, 66 Me., 239; *Collard v. Railway Co.*, 7 H. & N., 79; *Hart v. Railroad Co.*, 13 Met., 99, 104; *Wellington v. Downer Kerosene Oil Co.*, 104 Mass., 64; *Metallic Compression Casting Co. v. Railroad Co.*, 109 Mass., 277; *Salisbury v. Herchenroder*, 106 Mass., 458; *Perley v. Railroad Co.*, 98 Mass., 414; *Kellogg v. Railway Co.*, 26 Wis., 223; *Patten v. Railway Co.*, 32 Wis., 524, and 36 Wis., 413; *Williams v. Vanderbilt*, 28 N. Y., 217; *Ward v. Vanderbilt*, 34 How. Pr., 144; *Bowas v. Pioneer Tow Line*, 2 Sawy. (U. S. C. C.), 21. These cases, and many more which might be cited, clearly establish the doctrine that one who commits a trespass or other wrong is liable for all the damage which legitimately flows directly from such trespass or wrong, whether such damages might have been foreseen by the wrong-doer or not.

As stated by Justice COLT in the case of *Hill v. Winsor*, 118 Mass., 251: "It cannot be said, as a matter of law, that the jury might not properly find it obviously probable that injury in some form would be caused to those who were at work on the fender by the act of the defendants in running against it. This constitutes negligence, and it is not necessary that the injury, in the precise form in which it in fact resulted, should have been foreseen. It is enough *that it now appears to have been* a natural and probable consequence."

In the case of *Bowas v. Pioneer Tow Line*, *supra*, Judge HOFFMAN, speaking of the rule in relation to damages on a breach of contract, as contrasted with the rule in case of wrongs, says: "The effect of this rule is more often to limit than to extend the liability for a breach of contract, although sometimes, when the special circumstances under which the contract was made have been communicated, damages consequential upon a breach made under those circumstances will be deemed to have been contemplated by the parties, and may be recovered by the defendant. But this rule, as Mr. Sedg-

wick remarks, has no application to torts. He who commits a trespass must be held to contemplate all the damage which may legitimately flow from his illegal act, whether he may have foreseen them or not; and so far as it is plainly traceable, he must make compensation for it."

The justice and propriety of this rule are manifest, when applied to cases of direct injury to the person. If one man strike another, with a weapon or with his hand, he is clearly liable for all the direct injury the party struck sustains therefrom. The fact that the result of the blow is unexpected and unusual, can make no difference. If the wrong-doër should in fact intend but slight injury, and deal a blow which in ninety-nine cases in a hundred would result in a trifling injury, and yet by accident produce a very grave one to the person receiving it, owing either to the state of health or other accidental circumstances of the party, such fact would not relieve the wrong-doër from the consequences of his act. The real question in these cases is, Did the wrongful act produce the injury complained of? and not whether the party committing the act could have anticipated the result. The fact that the act of the party giving the blow is unlawful, renders him liable for all its direct evil consequences.

This was the substance of the decision in the old and often cited squib case of *Scott v. Shepherd*, 2 W. Bl., 892. Justice NARES there says that, " the act of throwing the squib being unlawful, the defendant was liable to answer for the consequences, be the injury mediate or immediate; " and in this view of the case all the judges agreed, although they differed upon the question as to the form of the action.

In the case at bar, the question to be determined is, whether the negligent act of the defendant's employees in putting the plaintiffs and their child off the train in the night-time, at the place where they did, was the direct cause of the injury complained of by the plaintiffs, or whether it was only a remote cause for which no action lies. We must, in considering this

case, take it for granted that the walk from the place where they left the cars to Mauston was the immediate cause of the injury complained of. We think the question whether there was any negligence on the part of the plaintiffs in taking the walk, was properly left to the jury, as a question of fact; and they found that they were guilty of no negligence on their part. They found themselves placed by the wrongful act of the defendant where it became necessary for their protection to make the journey. The fact that there was a station-house near by, at which they might have found shelter until another train came by, is not conclusive that the plaintiffs were negligent in the matter. They were landed at a place where they could not see it, and the jury have found that under the circumstances they were not guilty of negligence in not finding it. The defendant must therefore be held to have caused the plaintiffs to make the journey as the most prudent thing for them to do under the circumstances. And, we think, under the rules of law, the defendant must be liable for the direct consequences of the journey. Had the defendant wrongfully placed the plaintiffs off the train in the open country, where there was no shelter, in a cold and stormy night, and, on account of the state of health of the parties, in their attempts to find shelter they had become exhausted and perished, it would seem quite clear that the defendant ought to be liable. The wrongful act of the defendant would be the natural and direct cause of their deaths, and it would seem to be a lame excuse for the defendant, that, if the plaintiffs had been of more robust health, they would not have perished or have suffered any material injury.

The defendant is not excused because it did not know the state of health of *Mrs. Brown*, and is equally responsible for the consequences of the walk as though its employees had full knowledge of that fact. This court expressly so held in 'the case of *Stewart v. Ripon*, 38 Wis., 591, and substantially in the case of *Oliver v. Town of La Valle*, 36 Wis., 592.

Upon the findings of the jury in this case, it appears that

the defendant was guilty of a wrong in putting the plaintiffs off the cars at the place they did; that in order to protect themselves from the effects of such wrong they made the walk to Mauston; that in making such walk they were guilty of no negligence, but were compelled to make it on account of the defendant's wrongful act; and that, on account of the peculiar state of health of *Mrs. Brown* at the time, she was injured by such walk. There was no intervening independent cause of the injury, other than the act of the defendant. All the acts done by the plaintiffs, and from which the injury flowed, were rightful on their part, and compelled by the act of the defendant. We think, therefore, it must be held that the injury to *Mrs. Brown* was the direct result of the defendant's negligence, and that such negligence was the proximate and not the remote cause of the injury, within the decisions above quoted. We can see no reason why the defendant is not equally liable for an injury sustained by a person who is placed in a dangerous position, whether the injury is the immediate result of a wrongful act, or results from the act of the party in endeavoring to escape from the immediate danger.

When by the negligence of another a person is threatened with danger, and he attempts to escape such threatened danger by an act not culpable in itself under the circumstances, the person guilty of the negligence is liable for the injury received in such attempt to escape, even though no injury would have been sustained had there been no attempt to escape the threatened danger. This was so held, and we think properly, in the case of a passenger riding upon a stage coach, who, supposing the coach would be overturned, jumped therefrom and was injured, although the coach did not overturn, and would not have done so had the passenger remained in his seat. The passenger acted upon appearances, and, not having acted negligently, it was held that he could recover; it being shown that the coach was driven negligently at the time, which negligence produced the appearance of danger. *Jones v. Boyce,*

1 Stark., 493. The ground of the decision is very aptly and briefly stated by Lord ELLENBOROUGH in the case as follows: "If I place a man in such a situation that he must adopt a perilous alternative, I am responsible for the consequences."

So, in the case at bar, the defendant, by its negligence, placed the plaintiffs in a position where it was necessary for them to act to avoid the consequences of the wrongful act of the defendant, and, acting with ordinary prudence and care to get themselves out of the difficulty in which they had been placed, they sustained injury. Such injury can be, and is, traced directly to the defendant's negligence as its cause; and it is its proximate cause, within the rules of law upon that subject. The true meaning of the maxim, *causa proxima non remota spectatur*, is probably as well defined by the late Chief Justice DIXON in the case of *Kellogg v. Railway Co.*, *supra*, as by any other judge or court. He states it as follows: "An efficient, adequate cause being found, must be considered the true cause, unless some other cause not incident to it, but independent of it, is shown to have intervened between it and the result."

In the case of *M. & St. P. Railway Co. v. Kellogg*, 94 U. S., 475, the court say: "We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must therefore always be, whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury. . . . In the nature of things there is in every transaction a succession of events, more or less dependent upon those preceding; and it is the province of a jury to look at

this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies; and this must be determined in view of the circum-stances existing at the time."

Within this definition, the negligence of the defendant was the proximate cause of the injury to *Mrs. Brown*, as there was no other cause, not incident to such negligence, which inter-vened to cause the same.

There is, I think, but one case cited by the learned counsel for the appellant which appears to be in direct conflict with this view of the case, except those which relate to breaches of contract, and that is the *Pullman Palace Car Co. v. Barker*, 4 Col., 344. This case is, we think, unsustained by authority, and is in direct conflict with the decisions of this court in the cases of *Stewart v. Ripon* and *Oliver v. Town of La Valle,* *supra*. This decision is, it seems to me, supported by the principles of neither law nor humanity. It in effect says that, if an individual unlawfully compels a sick and enfeebled per-son to expose himself to the cold and storm to escape worse consequences from his wrongful act, he cannot recover damages from the wrong-doer, because it was his sick and enfeebled condition which rendered his exposure injurious. Certainly such a doctrine does not commend itself to those kinder feel-ings which are common to humanity, and I know of no other case which sustains its conclusions.

In the case of *Sharp v. Powell*, Law Rep., 7 Com. P., 253, the defendant was not held liable in an action of tort under the following circumstances: He unlawfully washed a van in the street, and the water ran down the gutter towards a grating leading to the sewer. In consequence of the extreme cold weather, the grating was obstructed with ice, so that the water could not escape, and so spread out and froze over the cause-way, which was badly paved and rough, and there froze. The plaintiff's horse, while being led past the spot, slipped upon

the ice and was lamed. The action was brought to recover for the injury to the horse, and, because it was shown that the defendant did not know that the grate was stopped so that the water could not escape, he was held not liable. This case comes within the rule above stated; there was an intervening and independent agency which caused the forming of the ice in the street, and the consequent injury, viz., the frozen condition of the grate, of which he was ignorant, and for which he was in no way responsible.

The cases of *I., B. & W. Railway Co. v. Birney*, 71 Ill., 391, and *Francis v. St. Louis Transfer Co.*, 5 Mo. App., 7, were both cases similar to the one at bar; but both cases were decided in favor of the defendants, because it was held by the court that the plaintiffs, after being wrongfully left by the defendants short of their journey's end, were guilty of gross negligence in their manner of attempting to complete the journey, and so were not entitled to recover. I should say, from the reasoning of the judges in both these cases, that the judgment would have been for the plaintiffs had there been no fault on their part, and had an injury occurred to them in prosecuting the journey not arising from their fault or the fault of a third person.

In the case of *Phillips v. Dickerson*, 85 Ill., 11, the defendant was doing no wrong to the plaintiff, and, so far as the case shows, was unconscious of her existence at the time. It was an exceptional case.

It would extend this opinion to too great length to undertake any review of the almost infinite number of cases in which the question of remote or proximate causes is discussed. No general and fixed rule can be laid down to govern all cases. It is said by the supreme court of the United States in *M. & St. P. Railway Co. v. Kellogg, supra:* "The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or legal knowledge. It is to be determined as a fact, in view of the

circumstances of fact attending it." And similar language was used by this court in the case of *Patten v. Railway Co.*, 32 Wis., 524–535. In that case the present chief justice says: "At all events, we think the question was properly submitted to the jury to determine, whether under all the circumstances the failure of the company to have a light at the depot on the arrival of the train was the direct and proximate cause of the accident.".

We think that all the objections made by the learned counsel for the appellant to the right of the plaintiffs to recover for the injury to the health of *Mrs. Brown* were overruled by this court in the cases of *Oliver v. Town of La Valle* and *Stewart v. Ripon*. In the *Oliver Case*, the injury complained of was like that in the case at bar. The only difference in the two cases is, that in the *Oliver Case* the evidence connecting the injury with the negligence of the defendant was more satisfactory than in the case at bar. But the question of the conclusiveness of the evidence is one for the jury, and they have settled that question in favor of the plaintiffs. In the *Oliver Case*, the negligence of the town caused the defendant's horses to fall through and get entangled in a bridge in the highway, which rendered it necessary that the plaintiff should make exertions to free the horses from their difficulty, and such exertions caused the injury complained of. It is the same in the case at bar, only not as plain in its circumstances. The negligence of the defendant put the plaintiffs in a situation which rendered it necessary for them to make an exertion to get out of such difficulty, and in doing so the plaintiff *Mrs. Brown* was injured, the same as Mrs. Oliver in the other case.

The case of *Stewart v. Ripon* settles the other question, that the peculiar condition of *Mrs. Brown* at the time is no defense to her claim for damages.

The objection made that the verdict should be set aside because the evidence shows a want of care on the part of the

defendants, and that the injury resulted from such want of care after the walk to Mauston, was clearly a question of fact for the jury. It does not appear from the record that any instruction upon this point was asked for by either party on the trial. There is, therefore, no error upon this point in the instruction. The evidence is not so clear that the damage was caused by the subsequent neglect of the plaintiff to procure proper medical attendance, as would justify this court in setting aside the verdict as against the evidence.

*By the Court.* — The judgment of the circuit court is affirmed.

COLE, C. J., and LYON, J., dissent.

The appellant having moved for a rehearing, the following opinion was filed April 5, 1882:

TAYLOR, J. Although the learned counsel for the appellant has made a very vigorous, not to say denunciatory, attack upon the opinion filed in this case, we do not deem it proper to deviate from our ordinary rule of denying the motion for rehearing without comment, when no questions are raised or argued upon such motion which were not fully argued at the original hearing. In denying this motion we deem it proper to say that the intimation of the learned counsel for the appellant that this case was not thoroughly argued at the original hearing, or carefully considered by the court before the opinion was delivered, is hardly just to either the counsel or the court. Certainly, on the part of the court, we intended to give it that careful consideration which its importance demanded, and we are not conscious that we have failed in our duty in that respect; and after reading the very carefully prepared brief submitted by the learned counsel for the appellant, and hearing his clear and forcible oral argument at the original hearing of this case, we think he does injustice to himself in suggesting that the points decided were not thoroughly argued at such hearing.

*By the Court.* — Motion denied.