be that, at the time when this corporation asked for and obtained the grant, others stood ready to furnish what the village was desirous of obtaining. The village has no railroad, and is therefore damaged. How much it is damaged may not be, and probably is not, susceptible of proof. It may be damaged in a very large sum, and yet under any legal rule it would be quite difficult, if not impossible, to prove its damage. By the terms of the contract the village evidently had in mind three things which it wished certainly to provide for: First, to compel a deposit by the plaintiff as a guaranty of good faith; second, to provide a fund to protect itself from any damage it might sustain by the construction of the road, in the interference with and tearing up of its streets; third, for such damages as it might sustain by a failure to construct the road. As the difficulty of legally establishing its damages under the last two heads would be attended with great embarrassment, and under the last nearly impossible, we think it was the intent of the defendant, fairly to be gathered from the contract and the surrounding circumstances, to contract for this sum as liquidated damages, and not as a penalty. The sum does not seem to be unreasonable in amount, or disproportionate to the actual damage which may have been sustained. It is needless to discuss and point out the distinction which exists in the cases relating to stipulations for damage in cases of breach of contract. In some of them, although the stipulation in words provided that the sum specified should be regarded as liquidated damages, the courts construed it as meaning a penalty. But this was done to prevent great injustice being worked, and relieve from hardship. No case in this country has gone to the extent of holding, where the nature of the contract clearly showed that damage may have been sustained, which would be difficult to establish, and a sum, not unreasonable, was stipulated for as liquidated damages for the breach, that such stipulation was to be treated as a penalty. On the contrary, under such circumstances the court had uniformly given effect to such stipulation as one for liquidated damages, in accordance with its terms. Clement v. Cash, 21 N. Y. 253; Ward v. Building Co., 125 N. Y. 230, 26 N. E. 256; 1 Sedg. Dam. (5th Ed.) § 394 et seq. There is nothing in this case which should take it out of the operation of the rule applied in the cases cited.

The judgment should be affirmed, with costs. All concur.

---

(21 App. Div. 307.)

MINOR v. LEHIGH VAL. R. CO.

(Supreme Court, Appellate Division, Fourth Department. October 15, 1897.)

1. CARRIERS—SETTING DOWN PASSENGERS—VIOLATION OF STATUTE—NEGLIGENCE.

To convey a passenger beyond his station, and require him to alight at a place where no adequate facilities are provided for alighting in safety, as prescribed by Laws 1890, c. 565, § 34, is negligence per se on the part of the carrier.

2. SAME—PROXIMATE CAUSE OF INJURY—QUESTION FOR JURY.

There was evidence that plaintiff, having been carried beyond her station, was required to alight on a steep embankment covered with slippery stones;

that the brakeman remained on the platform, and merely took hold of plaintiff's arm as she descended; and that she kept her right hand on the railing till both feet were on the ground, when she slipped, fell down the embankment, and was injured. *Held,* that it was for the jury to determine whether defendant's negligence in failing to discharge plaintiff at a place where there were adequate facilities for alighting in safety was the proximate cause of her injury.

Action by Hattie E. Minor against the Lehigh Valley Railroad Company to recover for personal injuries. A nonsuit was directed, and plaintiff moves for a new trial on exceptions ordered to be heard by the appellate division in the first instance. Motion granted.

Upon the 15th day of October, 1895, and at about 4 o'clock in the afternoon of that day, at a station known as "Rochester Junction," the plaintiff purchased a ticket for Red Creek, and took a train upon the defendant's road with the intention of riding to the latter place. Red Creek is a small station a short distance north of the junction, at which trains stop when there are passengers to get on or off. Soon after entering the defendant's train, the conductor took up the plaintiff's ticket, and passed on into the baggage car. When the train reached the station at Red Creek, it did not stop, but ran by at a high rate of speed. The plaintiff thereupon went into the baggage car in search of the conductor, and informed him that he had carried her past her destination. The conductor replied that he had forgotten all about her, and, pulling the bell cord, stopped the train. The plaintiff thereupon went back to the seat which she had occupied in the passenger coach, to obtain some articles which she had left there; and, while picking them up, the conductor came to the door, and told her to "hurry off" or "get off." She thereupon went out onto the platform, and started to get off upon the east side of the car. She says that she had a bottle of vinegar in one hand, and a basket in the other. In getting off, she took hold of the railing with one hand, retained the bottle in the other, and placed her basket upon the car step. At the point where the train stopped, which was at least half a mile beyond the depot, there was a steep embankment, the slope of which was covered with small, smooth stones. The conductor stood upon the platform of the car as the plaintiff attempted to alight, but rendered her no assistance whatever. A brakeman, however, did take hold of her arm as she was going down the steps, but remained on the train while doing so. In getting off the train, the plaintiff testified that she kept hold of the rail with her right hand until both feet were down, and that, when she got upon the ground, she slipped or slid down the embankment, into the ditch at the bottom thereof. At this time she was pregnant, and the evidence tends to show that she received physical injuries which were quite serious in their character. A nonsuit was directed at the close of the plaintiff's case, to which direction an exception was taken; and the same, with such other exceptions as appear in the case, was ordered to be heard by this court in the first instance.

Argued before HARDIN, P. J., and ADAMS, GREEN, and WARD, JJ.

E. B. Fenner, for appellant.
George F. Yeoman, for respondent.

ADAMS, J. The defendant is a common carrier of passengers, and, although it does not insure the safety of persons who ride upon its trains, yet its undertaking and liability are such as to require it to exercise the most exact care and diligence, not only in the management of its trains and cars, but also in the structure and care of its track, and in all the subsidiary arrangements necessary to the safety of its passengers. Story, Bailm. § 601. Moreover, it is under a statutory obligation to furnish adequate facilities at the usual stopping places of its trains for the accommodation of persons getting on or

off the cars, and to "take, transport, and discharge such passengers
*   *   *   at, from and to such places on the due payment of the fare
*   *   *   legally authorized therefor." Laws 1890, c. 565, § 34.    The
plaintiff confessedly purchased a ticket of the defendant which en-
titled her to ride from Rochester Junction to Red Creek, and to be
safely discharged from the defendant's train at the latter place. It
is not disputed that the defendant failed to fulfill the obligation
which the relation thus entered into with the plaintiff imposed upon
it; but it appears that, instead of so doing, it carried her a consider-
able distance beyond the point at which she was entitled to be dis-
charged from the train, and required her to leave the train at a place
where no facilities whatever were furnished for her accommodation,
convenience, and safety. It follows, therefore, that, if the plaintiff's
injury was the result of the defendant's failure to perform a duty
which was expressly enjoined by a statute of this state, she is en-
titled to maintain her action, because such failure is of itself negli-
gence. Cordell v. Railway Co., 64 N. Y. 535; Gorton v. Railway Co.,
45 N. Y. 660.

This case consequently resolves itself into the simple question of
whether or not the defendant's negligence can be said to have been
the proximate cause of the injury of which the plaintiff complains,
and it is to be examined upon this review solely with reference to a
correct determination of that question. At the outset, then, it may
be asserted without the least fear of contradiction that in all probabil-
ity the accident would not have occurred if the defendant had not
violated its statutory duty,—that is, if it had deposited the plaintiff
at the station at which she was entitled to be deposited; for at that
station, it is fair to assume, suitable accommodations existed for the
care and convenience of passengers who had occasion to alight from
the defendant's cars. But this circumstance of itself does not neces-
sarily connect the plaintiff's injury with the defendant's negligence;
for, although she was carried beyond her destination, she might still
have been furnished a safe exit from the train, and thus enabled to
reach her home, which it appears was in that vicinity, without suf-
fering any more serious results than the personal inconvenience
which would be occasioned by being obliged to walk back to the sta-
tion; and in these circumstances she would perhaps be remitted to
her right to recover such damages as she had sustained in consequence
of the defendant's breach of contract. To proceed, then, a step fur-
ther in the case, we conclude that inasmuch as the defendant had
sold this plaintiff a ticket to Red Creek, which its conductor had
taken up under the implied agreement to stop his train at that sta-
tion, the duty rested upon him, when apprised of the fact that he had
carried the plaintiff past her destination, to either back the train up
to the depot, or else stop it at some point where the plaintiff could
alight without exposure to unnecessary hazard. Did he do this?
He certainly did not cause the train to return to the station, but,
instead thereof, he stopped it upon an embankment, which, if the
plaintiff's evidence is to be believed, was steep and slippery, and then
permitted her to alight with but little or no assistance from any of
the defendant's employés. These facts, uncontradicted and unex-

plained, would be sufficient, we think, to permit a jury to find that the defendant did not furnish the plaintiff a reasonably safe and fit means of alighting from its train, and that it was consequently guilty of negligence which was the proximate cause of the latter's injury. Hulbert v. Railway Co., 40 N. Y. 145; Brassell v. Railway Co., 84 N. Y. 241; Armstrong v. Railway Co., 66 Barb. 437, affirmed 53 N. Y. 623; Lewis v. Canal Co., 145 N. Y. 508, 40 N. E. 248; Robson v. Railway Co., 12 Moak, Eng. R. 302; Brown v. Railway Co., 54 Wis. 342, 11 N. W. 356, 911; Foy v. Railway Co., 114 E. C. L., 225. As the question of contributory negligence was clearly one for the jury, we think it was error in the learned trial court to direct a nonsuit, and that the plaintiff's motion must therefore be granted.

Exceptions sustained, and a new trial ordered, with costs to abide the event. All concur.