# Charles Baker *v.* George Hagey and Samuel Hagey, Appellants.

[Marked to be reported.]

*Negligence—Flying missiles—Charge of court.*

In an action to recover damages for personal injuries caused by a piece of steel flying from an establishment where steel ingots were broken up by dynamite, it is reversible error for the court to charge that no matter what precautions the defendants took, if, " notwithstanding these precautions these missiles did fly from that place, and did cause this injury, then in law they would be liable in this action." Such error is not cured by the fact that the court in another part of the charge had stated that the defendants were not liable unless they were guilty of negligence.

*Negligence—Flying Missiles—Evidence.*

In an action to recover damages for personal injuries caused by a piece of steel flying from a building where steel ingots were broken up by dynamite, evidence is admissible that prior to the accident large and small pieces of steel which had been shattered by blasts were thrown out and scattered from the building.

*Negligence—Damages—Charge of court.*

In an accident case where it appears that the plaintiff lost his arm in the accident for which suit was brought, and that some years before he had lost his other arm, it is not error for the court to say to the jury, " You can look into the future and make an estimate of what would be his probable expenses if you believe that as a natural result of this injury he will hereafter always require medical attendance and nursing, and whatever may be a fair compensation upon that score you will be entitled to give him."

*Evidence—Letters—Negligence.*

In an action for damages for personal injuries where it is sought to charge that one of two defendants was actually engaged in the business in the conduct of which the accident occurred, it is proper to admit in evidence a letter written by a son of the defendant sought to be charged and signed with the father's name, if it appears that the son had general authority to sign his father's name to such a letter, and the letter itself is a part of a large correspondence material to the case.

*Negligence—Joint owners of business—Presence of defendants at place of accident.*

Where it is sought to charge two owners of a joint business with negligence the actual presence of one of the defendants at the moment of the accident is not necessary to make him liable, if the other facts and circumstances are sufficient to show liability.

*Negligence—Plaintiff's statement—Charge of court.*

Where two defendants are sued for negligence and are charged in plaintiff's statement as two independent persons, both of whom are liable for a permanent injury inflicted by them both, it is proper for the court to charge that if both are liable under the evidence the verdict should be against both, if one only is liable in accordance with the testimony, and the other is not, the verdict should be against the one who is liable, and in favor of the one who is not, and if neither is liable, the verdict should be for both.

*Negligence—Joint owners of business—Question for jury.*

In an action against two persons to charge them with the consequences of an accident by which plaintiff was injured, the case is for the jury if the evidence is conflicting as to whether the two defendants were jointly engaged in the business in the conduct of which the accident occurred.

Argued Feb. 5, 1896.　Appeal, No. 136, Jan. T., 1896, by defendants, from judgment of C. P. Montgomery Co., June T., 1894, No. 157, on verdict for plaintiff.　Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ.　Reversed.

Trespass for personal injuries.　Before WEAND, J.

At the trial it appeared that on April 21, 1894, the plaintiff was struck by a piece of steel thrown out by a blast from an establishment where the defendants were breaking up steel ingots by dynamite.　Prior to the accident the plaintiff had one arm, and in consequence of the accident he lost the other.　The evidence for the plaintiff tended to show that the defendants who were father and son entered into a contract with the Midvale Steel Works by which they undertook to break up steel ingots.　To carry out the contract a limestone quarry in Plymouth township was leased, and a structure placed thereon for breaking up the steel.　At the time of the accident plaintiff was employed in an adjoining quarry used by the supervisors of the township.　George Hagey, one of the defendants, claimed that he had no interest in the contract, and that he simply advanced the money to the other defendant, his son Samuel, to carry it out.

When the plaintiff was on the stand he was asked this question :

Q. During that time was there much steel thrown out and around on the highway and the quarry in which you worked up to the time you were injured ?

Objected to as immaterial and incompetent.   Objection over-ruled.   Defendants except.   Bill sealed.

A. They blasted every day.   When they blasted there was pieces of steel all around there; every day small pieces came around over into the quarry everywhere, and dropped along-side of our boiler-house; a great many pieces flew over to Graver's. . . . I couldn't say how often I saw steel flying into the road, or in the quarry, but I saw pieces fly in the quarry when we were running.   They were bigger than a walnut with the hull on it. [1]

Lewis K. Graver, a witness for plaintiff, testified that he lived there when the blasting was going on, and he was asked:

Q. When the blasts were put off before the accident, and down to the time of the accident, what was the result?

Objected to.   Objection overruled.   Bill sealed.

A. Very often the steel would fly outside of their inclosure, and go sometimes a great distance.   We could only tell about the steel flying when the pieces lit upon the ground. . . . There were pieces went clean over my house.   I could hear them. They would sound a noise similar to a bullet, and the only time I really saw a piece fall, that landed on a stone wall in front of my house, running along the road.   That was the only time I saw a piece with my own eyes, with the exception of one that dropped down on the railroad, right close to the works. [1]

Joseph Lovett, a witness for plaintiff, testified: During the time of its operation, before this injury to Baker, I used to take a walk around to this blasting place every day.   I saw how the house was constructed in which they carried it on.   They had cut a lot of trees out of the woods somewhere, and fetched them there, and made a kind of log shanty and then they laid logs across of the same description.   The logs were naturally crooked and they would lay there, and there might be a hole there that you might jump through.   I went down through it myself.   They would fix it all over, and then the very first blow that would come would make it loose again, and they wouldn't stop to fix it. [1]

Counsel for defendants objected to all specific acts of negli-gence antecedent to the accident.

The court admitted evidence of the manner in which the busi-

ness was carried on by the defendants at and immediately pre-ceding the day of the accident, and overruled the objection.

Defendants excepted. Bill sealed.

Witness continued under this ruling.

You could hear pieces whizzing through there, and go "whiz." There were times that I saw pieces that were large enough to see. Small pieces you couldn't see. There was one piece that dropped right in where we were crushing stone. . . . It dropped right down past George Corson's, right into the quarry, and I picked it up. . . . I heard several pieces drop. There is one piece that I went over and got off Graver's shed. [1]

The testimony of William Spielhofer, John Shallow, Matt Fogarty, Edward Hunter and Ellwood Livezey, witnesses for the plaintiff, was of similar character, and was admitted after objection thereto by defendants, on the same ground, and excep-tion granted to defendants. [1]

Dr. C. H. Mann, a witness for plaintiff, after having described the character of plaintiff's injuries and his present condition, and stated that he would be a helpless cripple for life, testified, as follows :

Q. Is there any attention required relative to his arm outside of what the physician gives him ? A. Yes, sir ; the arm requires to be cleansed every day ; it requires to be bound up and cleansed or else it becomes very pernicious. Q. What sort of a person would it require, therefore, as an attendant to perform such duties ?

Objected to on the ground that plaintiff's statement does not set forth or contain any averment of the necessity of such ser-vices and attendant, or any claim for the cost and expense thereof.

The court admitted the evidence, reserving the right to strike it out, upon further consideration. Defendants excepted. Bill sealed.

A. It would require some one with judgment in those matters. By that I mean not just any child to do it ; it would have to be somebody with experience. I have been a physician for twenty years, and I have had occasion to employ nurses and attendants for sick and helpless people, and am acquainted with the mar-ket prices in this locality for services rendered by such persons. In my judgment, the services that would be requisite to give

the proper attention to the physical wants and this lame arm of this man would require a dollar a day, or at the rate of $7.00 a week. [2]

Alexander Petry, superintendent of the Midvale Steel Works, testified as follows :

McNally is in charge of our open hearth. He is in the employment of the company, and was employed and directed by me as superintendent to go out and secure some one to take the contract for breaking up this steel. It was in consequence of that direction that he returned and reported to me what I was about to detail—part of it. This was the interview between me and George and Samuel that the letter refers to. (The letter of the witness dated January 25, 1894, in relation to the interview and the contract.) . . . It was in consequence of the report that McNally made to me that I designated George Hagey to take this contract. McNally was acting in the interest of the company at this time, and for this special purpose at that time, and any report that he made to me would be accepted by me as my guide for my conduct in making a contract subsequently.

Defendant proposed to ask the witness what that information which he derived from McNally was.

Plaintiff objected on the ground that it was inquiring as to conversations between third parties in the absence of plaintiff.

Defendants, in reply, contended that it was part of the res gestæ of the contract, and therefore admissible.

Objection sustained. Defendants except. Bill sealed. [3]

George J. Humbert, a witness for plaintiff, testified : In April, 1894, I was general manager of the Norristown Steel Company. Its operations are manufacturing steel castings of all descriptions. I wrote a letter to George Hagey as superintendent of the steel company.

Counsel for plaintiff called for the production of the letter referred to.

Counsel for defendants replied that they did not know whether they had such a letter or not, but if they had it they would produce it.

Q. You wrote a letter to George Hagey? A. Yes, sir. (Letter dated April 12, 1894, shown witness.) I received this in reply.

Counsel for plaintiff offered in evidence the letter referred to, with the envelope, marked respectively " C " and " D," to show who was carrying on the business there at that time.

The letter is as follows :

"WAYNE JUNCTION, April 12, 1894.

" NORRISTOWN STEEL CO.

" Gents—Your letter received in reference to breaking steel scrap.  In reply we say we are prepared to break any amount of scrap that you may have in pieces not to exceed twenty inches square.  We have a derrick and machinery to hoist pieces containing fifteen tons.  We have a large contract with the Midvale Steel Company, and are giving entire satisfaction to them, and having facilities for doing a large business, we will contract with you to break your scrap at six dollars a ton, you paying freight both ways.

"Yours respectfully,

" GEORGE HAGEY.

" Wayne Junction, Germantown, or Plymouth Meeting, Montgomery County, Pa.

" P. S.—Our plant is at Tyrol Station, on Plymouth branch of P. & R. Railroad, three miles east of Conshohocken."

The envelope is headed as follows :

" GEORGE HAGEY,
" Lime and Coal, etc.'

Addressed :

" NORRISTOWN STEEL CO.,
" NORRISTOWN, MONTGOMERY CO."

Defendants objected.  Objection overruled.  Bill sealed. [4]

Q. You say the letter to which this is a reply you sent to George Hagey?  A. Yes, sir, and he received it, unquestionably, from the reply.  This is in reply to the letter I wrote him with reference to breaking steel scrap for us.  There must be a copy of that letter somewhere.  The books were all turned over to the American Steel Casting Company, and I do not know what has become of those.

Counsel for defendants made an additional objection to the introduction of this letter on the ground that the whole correspondence should be exhibited, and also that this letter, as had been expressly testified, was written by Samuel Hagey.

Objection overruled.  Defendants except.  Bill sealed. [4]

The court charged in part as follows :

[You have heard from the various witnesses in this case what was done as a matter of protection.  On the part of the plaintiff it has been testified that these logs were so placed on the top of this plant as to leave openings between the logs sufficiently large to allow pieces of steel to escape.  This has been testified to you by a number of persons, and you will, therefore, have no difficulty in deciding upon the question as to whether that was negligence or not, if you believe that statement to be true, because if they did thus construct their plant so that openings were left, through which flying missiles could come, it would of itself establish that they had not taken that due precaution which the law requires.  On the part of the defendants it has been testified that there were two or three layers of these logs, and that they had used all reasonable precautions to protect the public.  But I instruct you as a matter of law that no matter what precaution they took, if, notwithstanding these precautions, these missiles did fly from that place and did cause this injury, then in law they would be liable in this action.  So far as that branch of the case therefore is concerned I apprehend you will have no difficulty in arriving at a conclusion.] [5] . . . .

[He (plaintiff) is entitled to any expenses that he has incurred or that are likely to be incurred as a natural result of this injury. . . . He is not only entitled to what took place in the past, but he is entitled, under the law, to what will compensate him for all the expenses which may be reasonable and necessary as a consequence of this injury.  You can look into the future and make an estimate of what would be his probable expenses if you believe that as a natural result of this injury he will hereafter always require medical attendance and nursing, and whatever may be a fair compensation upon that score you will be entitled to give him.] [6]

Defendant's points and answers were as follows :

1. As the present action is brought against the defendants as

joint trespassers, and the statement of plaintiff's claim alleges that on the 21st day of April, 1894, they were engaged in blasting with dynamite large masses of steel, which blasting was done negligently and wrongfully and carelessly, so that in consequence thereof plaintiff was hurt and injured in the manner described, the burden of proof is on him to show these alleged facts affirmatively by positive evidence that the defendants were on that day jointly engaged in such blasting, and that the work was done in the negligent and careless manner complained of, and that plaintiff was injured in consequence thereof, or the verdict must be for the defendants.   And if the evidence shows that only one of them was so engaged in blasting on that day, and in such negligent and careless manner, the verdict can only be rendered against that one, as the actual wrongdoer, and must be in favor of the other defendant.   *Answer* : In order to recover in this case, the plaintiff must convince the jury by the weight of the testimony that his injuries were the result of the negligence of the defendants, or one of them, or because of the negligence of the servants of the defendants, or one of them, in the operation of blasting steel, causing the accident.   If both defendants were interested in the operation, in the sense that they were joint owners thereof, or that it was carried on for their joint benefit, then they would both be liable for any acts or negligence contributing thereto, and neither would be excused from the fact that he was not present on the day of the accident.   If the jury find that either defendant was not interested in the operation of blasting in the sense that he was not an owner, or that it was not carried on for his benefit on the day of the accident, then the verdict should be in favor of such defendant.   If George Hagey merely loaned money to Samuel that fact alone would not make him liable in this action. But if he was interested in the operation, the mere fact that he was not present on that particular day would not excuse him.] [7]

2. Under the pleadings and evidence in this case, if the jury believe that the work of blasting steel was done negligently and carelessly, and that the plaintiff was injured in consequence thereof, the verdict can only be rendered against the defendant who the evidence shows was, at the time of the happening of such injuries, present and engaged in said work, and must be

in favor of the other defendant. *Answer:* I cannot affirm this point. As I have already stated to you, the mere fact that one of the defendants was not present would not excuse him if the jury find that he was interested in this operation in the manner that I have detailed. [8]

Verdict for plaintiff for $15,000. Judgment for plaintiff for $10,000, remittitur having been filed. Defendants appealed.

*Errors assigned* were, (1–4) rulings on evidence, quoting the bills of exceptions; (5–8) above instructions, quoting them; (9) because the learned judge erred in not charging the jury that if they believed the testimony of Alexander Petry, Peter McNally, Henry Freedly, John J. Corson and J. C. Goade, in reference to the contract with the Midvale Steel Co., the leasing of the property for the construction of the plant and the purchase of materials for the carrying on of the blasting operations and of defendants themselves, that George Hagey had no interest whatever therein, it would be their duty to find a verdict in his favor; (10) because the learned judge' erred in not charging the jury that there was not any evidence in the cause to show joint ownership of, or joint interest in, or joint management or conduct by defendants in the business of steel blasting carried on at that plant; (11) because the evidence in the cause does not justify, and is not sufficient to sustain the verdict rendered by the jury.

*Edward E. Long* and *R. O. Moon,* with them *Geo. W. Harkins,* for appellants.—Because a man was careless or negligent of his duty in one or two specific instances, it does not follow that he was so at another time and under different circumstances: Robinson v. Fitchburg R. R., 7 Gray, 92; Tenney v. Tuttle, 1 Allen, 185; Central R. R. v. Roach, 64 Ga. 684.

Special damages which are for the natural but not the necessary result of the act complained of must be specially alleged. The object of this rule is to prevent any surprise upon the defendant: 5 Am. & Eng. Ency of Law, 50.

In order to excuse a defendant from the consequences of an accident it is not necessary that it should not have been inevitable, it is only necessary that due and proper care should have been taken to avoid it: R. R. v. Adams, 89 Pa. 31; Albert v.

Ry., 98 Pa. 316 ; McGrew v. Stone, 53 Pa. 436 ; Turnpike Co. v. R. R., 54 Pa. 345.

Unless the negligence of two persons was joint and concurrent, each is liable for his own negligence only : Boyd v. Patrol, 113 Pa. 269; Klauder v. McGrath, 35 Pa. 128; Sherman & Redfield on Negligence, sec. 58.

This is one of those verdicts, unfortunately too frequent, which are dictated by the sympathies and not by the common sense of juries. It is the duty of the court to handle such cases without gloves : Fox v. Borkey, 126 Pa. 164 ; Holden v. Penna. R. R., 169 Pa. 17.

*J. P. Holland,* of *Holland & Dettra,* and *N. H. Larzalere,* of *Larzalere & Gibson,* for appellee.—Previous defective existence is always evidence of actual or constructive notice : Henderson v. R. R., 144 Pa. 474; R. R. v. Stranahan, 79 Pa. 405; Gowen v. Glaser, 3 Cent. Rep. 109 ; R. R. v. Hendrickson, 80 Pa. 182 ; Glossen v. Gehman, 147 Pa. 619; Patterson v. R. R., 76 Pa. 389 ; Ray on Negligence, 9.

The charge of the court as to damages was correct: Scott Twp. v. Montgomery, 95 Pa. 444.; Mallon v. Gay, 10 Pa. C. C. 109 ; Hawes v. O'Reilly, 126 Pa. 440.

Appellants were the proprietors of the business, and, as such, responsible for the acts of their employees within the range of the latter's duties : Boyd v. Patrol, 113 Pa. 269 ; Klauder v. McGrath, 35 Pa. 128.

The facts found and the reasons given by the court for refusing a new trial are given as part of the argument for the appellee as follows :

These facts were practically undisputed ; the material blasted was steel ingots weighing many tons ; the material used to break them up was dynamite ; the plant was located close to a public road; the place was a cave or opening covered on top by logs to prevent pieces from flying out; notwithstanding the precautions used, large pieces of steel (one weighing at least twenty-five pounds) were almost daily thrown out a distance of two hundred or three hundred yards; some of these pieces were brought back by the employees ; one piece knocked down part of a stone wall distant five hundred or six hundred feet. These facts were not denied. It was apparent, then, that the business was

dangerous, both because of the location and the manner in which it was conducted, and that notwithstanding the precautions used, if any, pieces would escape, thus endangering the lives of passers-by. An accident having occurred in the usual course of conducting the business, were not the defendants or those interested in the business responsible in damages? Or were they excused simply because they had used ordinary caution? If so, then the rights of the owners of this plant were superior to those of the public, and the citizens and residents of that locality must either abandon the highway and their properties or submit to injuries received. It is complained that this took the question of negligence from the jury. It was not claimed that the plaintiff was guilty of contributory negligence, nor could it be; nor that it was an act of God or an inevitable accident. The defendants simply took the position that as they had used proper precautions the plaintiff must take the consequences. As to what constitutes negligence is for the court; whether the facts prove such negligence is for the jury; and where the facts are undisputed it is for the court to declare the liability: Gramlich v. Wurst, 86 Pa. 74; Hoag v. R. R. Co., 85 Pa. 293.

Upon an undisputed state of facts it is the province of the court to pass upon the question of defendant's negligence: Koons v. Telegraph Co., 102 Pa. 164; Baker v. Gas Co., 157 Pa. 593.

Where a duty is defined, a failure to perform it is negligence, and may be so declared by the court: R. R. Co. v. Coon, 111 Pa. 430; R. R. v. Peters, 116 Pa. 206; Arnold v. R. R. Co., 115 Pa. 135.

We think, therefore, that as the evidence of both plaintiff and defendants showed a clear case of negligence, it was the duty of the court to instruct the jury, as was done, inasmuch as the defendants must have known that by the method used they could not carry on the business without throwing out pieces of steel, and when, in defiance of this knowledge, they still pursued the same course, they were guilty of negligence as a matter of fact and law.

OPINION BY MR. JUSTICE GREEN, October 5, 1896:

We do not see how we can avoid reversing this judgment on the fifth assignment of error. The learned court below charged

the jury thus: "But I instruct you as a matter of law that no matter what precautions they took, if, notwithstanding these precautions, these missiles did fly from that place and did cause this injury, then in the law they would be liable in this action. So far as that branch of the case therefore is concerned I apprehend you will have no difficulty in arriving at a conclusion." The plain meaning of this language is that the defendants were absolutely liable if the missiles did fly from the place of blasting, and did cause the injury. As there was no dispute about either of these facts the instruction was a practical direction to find for the plaintiff, without any reference to the question of negligence. Of course this is not the law, and the learned court had previously instructed the jury that the defendants were not liable unless they were guilty of negligence. But in the above quoted extract from the charge the learned judge told the jury that no matter what precautions were used to prevent the discharge of the missiles, the defendants were liable if the missiles escaped and caused the injury. In other words the mere fact of the accident established the right of recovery without proof of negligence. As this is in direct hostility with the earlier part of the charge there would necessarily be much confusion in the minds of the jurymen as to what the law really was. Thus the learned court at the opening of the charge said to the jury: "It is undisputed that he (the plaintiff) sustained an injury. This in itself, would not sustain his action, unless he shows to your satisfaction that it was caused by negligence, and therefore, in considering this case, our first duty is to inquire as to whether the evidence convinces you that there was negligence in the case." According to the part of the charge covered by the fifth assignment no inquiry as to negligence was necessary, because no matter what precautions were taken by the defendants, they were absolutely liable if the plaintiff sustained his injury by missiles thrown from the quarry. As these conflicting instructions would materially tend to mislead the jury, and as the part of the charge excepted to is clearly erroneous, the fifth assignment must be sustained.

We do not think the first assignment can be sustained. The evidence offered and admitted under exception tended strongly to show a negligent condition of the structure within which the blasts were discharged, as well as specific resulting acts of dis-

charge. These latter were manifested by the emission and scattering of both large and small pieces of the steel which had been shattered by the blasts, and in this regard the testimony is quite similar to that which is always admitted in cases of fires caused by the emission of sparks from locomotive engines. If the engine is known, all the authorities concur that previous emissions of sparks by that engine may be shown. This whole subject is so thoroughly discussed in an elaborate opinion by our late Brother CLARK in the case of Henderson v. Railroad, 144 Pa. 461, that a mere reference to it is sufficient. Here the discharges took place from a known building or structure, and certainly evidence of its condition before and at the time of the discharge in question was competent, and as the testimony showed frequent discharges through, and from it, the proof tended to show its condition.

The second and sixth assignments cannot be sustained, as the testimony offered and received was clearly competent and genmane to the plaintiff's cause of action. Of course the previous loss of the other arm could not be considered as a cause of damage in this case, and there was no such instruction in the charge. The testimony as to the plaintiff's actual condition could not be excluded.

The third assignment is without merit. The conversations testified to by the witness Petry were between third persons so far as the plaintiff was concerned, and the proposed inquiry would develop that which was mere hearsay. But the whole of the evidence as to this conversation was subsequently admitted and no harm was done to the defendants by its exclusion at this stage.

It is not correct to say that the letter of April 12, 1894, from George Hagey to the steel company was admitted without any proof of its being written or authorized by George Hagey. It was written as a direct reply to a letter received by him from the Norristown Steel Company, and it was written on a letter head sheet of George Hagey's, and both he and his son Samuel testified substantially that it was written or signed by George Hagey's son Percy. It was one of a series of letters all on the same subject and formed part of a quantity of correspondence which was material to the case. George Hagey being examined as a witness in regard to it did not deny his son's authority to

sign such a letter in his name. We think the testimony was sufficient to justify its admission in evidence. The fourth assignment is therefore dismissed.

Seventh and eighth assignments. The answer to the eighth point of the defendant was certainly correct. The actual presence of the defendant at the moment of the accident was not necessary to make him liable, if the other facts and circumstances were sufficient to show liability.

The answer to the seventh point of defendant seems to us to be entirely correct. The plaintiff's statement of claim does not charge the defendants as partners, nor as joint tort feasors in the sense that they were subject to a joint obligation, or had a joint interest in the business. They were charged rather as two independent persons both of whom were liable for a permanent injury inflicted by them both. Of course if both were liable under the evidence, the verdict should be against both, if one only was liable in accordance with the testimony, and the other was not, the verdict should be against the one who was, and in favor of the one who was not. If neither was liable the verdict should be for the defendants. This is precisely what the court charged and we fail to discover any error in it. These assignments are dismissed.

Ninth, tenth and eleventh assignments. There is no merit in these assignments and they are not sustained. The court below was not asked to charge the jury that if they believed the testimony of the witnesses named in the ninth assignment, George Hagey had no interest in the business, and therefore there was no error in not so charging. The court could not possibly instruct the jury that there was no evidence that there was any joint ownership, interest or management in the business of steel blasting at the place in question, because there was much testimony showing the participation of both in the conduct of the business. This evidence was necessarily for the jury and could not be withdrawn from them. It must be confessed that the explanatory testimony of the fact that George Hagey's name appears in the papers as the party contracting and otherwise participating, and the positive testimony of both defendants that George Hagey had no interest in the business, seem to be sufficient to establish that fact, yet it is a question of fact, and the credibility of the witnesses, and the effect of the various

facts and circumstances in evidence as they bear upon that subject, was for the jury to determine, and could not be taken from them.  We think the court below was not in error in submitting the case to the jury although it is quite possible that we would have reached a different conclusion if we were disposing of the facts.  Judgment reversed and new venire awarded.