# Otto Gas Engine Works, Appellant, v. Pepper.

*Contract — Sales — Parol contemporaneous agreement — Evidence — Charge.*

1. In an action to recover the price of an electric light plant it appeared that there was a written contract which specifically stated what the defendant was to get for the price which he was to pay.   The contract contained this clause: "And it is further agreed that this instrument evidences the whole contract under which the said engine is received by the undersigned."   The contract also provided that the plaintiff was to lay a necessary concrete foundation for the plant.   It was admitted that such a foundation should extend sixty inches below the floor level.   It was shown that it extended only twenty-two inches. When the plant was put in operation it was found that the noise, vibration and shock were so great as to render the building uninhabitable. Nothing was said in the contract about noise and vibration, but defendant alleged that there was a contemporaneous parol agreement that there should be no noise or vibration.   The court charged that if the noise and vibration were undue and more than a reasonable man should have anticipated a defense was made out.   It also permitted the jury to take into consideration the alleged parol representations. *Held,* that such instructions were erroneous.

2. In such a case the appellate court has no means of determining whether a verdict for the defendant was based upon the failure of the

plaintiff to build a proper foundation according to the contract, or upon the erroneous portions of the charge.

Argued Jan. 4, 1910. Appeal, No. 140, Jan. T., 1909, by plaintiff, from judgment of C. P. No. 2, Phila. Co., June T., 1905, No. 1,118, on verdict for. defendant in case of Otto Gas Engine Works v. J. W. Pepper. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Assumpsit to recover the contract price of an electric light plant. Before WILTBANK, J.

The court charged in part as follows:

[You may, however, determine whether as a fact the noise, vibration and shock were undue (leaving out of view entirely all questions as' to whether the plaintiff had promised there should be none, because you are to look to the written contract alone for its promise). You may, however, determine whether as a fact, upon the other proofs offered, the noise, vibration and shock were undue and more than a reasonable man in his position should anticipate, and more than the plaintiff might claim as ordinary and reasonable. If they did exceed this standard, you may further consider how far it is a defense to this action, and if you find that it was so grave an interference with the effect or use of the machinery as to render it practically useless in view of the situation of the man and his relations to his neighborhood, you may find that the defendant has made out a defense on that head.] [3]

Plaintiff presented this point:

5. Even if it be true that there was noise and vibration caused by the gas engines, generators, etc., erected by plaintiff for defendant, under the written contract sued on in this case, those facts furnish no defense to plaintiff's claim. *Answer:* That I decline to charge. [4]

Defendant presented these points:

5. If from the evidence the jury believe that the en-

gines installed by the defendant were not erected upon the necessary concrete foundations, so as to be operated to the capacity of twenty horse power each, without undue noise, vibration and shock, the plaintiff has not complied with its contract, and the verdict should be for the defendant. *Answer:* That I affirm. [5]

10. If from the evidence the jury believe that the defendant was without skill or experience in the matter of installing engines and dynamos, and relied upon the statements and representations made by plaintiff's agent, as to its freedom from noise, vibration and shock, so as to make it fit and suitable for installation and operation in an apartment house, and the engines when installed and operated did produce undue noise, vibration and shock, so as to be unsuitable for use in an apartment house, plaintiff cannot recover, and the verdict should be for the defendant. *Answer:* That I affirm. [6]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (3–6) above instructions, quoting them.

*Alex. Simpson, Jr.,* with him *Ernest L. Tustin,* for appellant.—If a purchaser knowing that the machinery which he purchases will cause noise and vibration in its operation, does not contract there against, but himself undertakes to obtain and construct the necessary preventative agencies, he cannot defeat a claim for the purchase moneys by proving that the noise and vibration was so great as to prevent his using the engines in the place where he directed them to be put: Port Carbon Iron Co. v. Groves, 68 Pa. 149; Jarecki Mfg. Co. v. Kerr, 165 Pa. 529; Amer. Home Savings Bank Co. v. Guardian Trust Co., 210 Pa. 325; Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510 (12 Sup. Ct. Repr. 46); Thomas v. Loose, 114 Pa. 35; Hallowell v. Lierz, 171 Pa. 577; S. Morgan Smith Co. v. Supply Co., 221 Pa. 165;

Wetherill v. Neilson, 20 Pa. 448; Mahaffey v. Ferguson, 156 Pa. 156; Selin v. Snyder, 11 S. & R. 319; Gearing v. Lacher, 146 Pa. 397; Wolf v. Wolf, 158 Pa. 621; Baker v. Hagey, 177 Pa. 128.

*Ormond Rambo,* with him *Wayne P. Rambo,* for appellee.—Defendant having relied upon plaintiff's advice, and statements as to the kind of engines plaintiff was then manufacturing, their suitableness to defendant's apartment house, the power required to obtain the result desired, and the selection by plaintiff of the location in defendant's premises, and the agreement by plaintiff to install, there was an implied warranty that the machinery to be installed was reasonably suitable to do the work in the place where the same was installed: Osborne v. Walley, 8 Pa. Superior Ct. 193; Warder v. Blair, 4 Penny. 182; McCormick Harvesting Machine Co. v. Nicholson, 17 Pa. Superior Ct. 188; Erie City Iron Works v. Barber, 102 Pa. 156.

This was a purchase of a plant to be installed by plaintiff for a particular use, made known to the seller.

In purchase for a particular use made known to the seller, if the buyer relies on the vendor's judgment to sell it, and not on his own, there is an implied warranty that the article is reasonably fit and suitable for that purpose: Benjamin on Sales (7th ed., 1889), 686; Driesbach v. Bridge Co., 81* Pa. 177; Jarecki Mfg. Co. v. Kerr, 165 Pa. 529; Port Corbon Iron Co. v. Groves, 68 Pa. 149.

Testimony showed conclusively that plaintiff had not furnished the necessary concrete foundations upon which to install the engines in defendant's building, and in consequence thereof the engines could not be used.

OPINION BY MR. JUSTICE BROWN, May 9, 1910:

On January 30, 1905, the appellee entered into a written contract with the appellant for the installation of an electric light plant in a building owned and used by him

as an apartment house, in the city of Philadelphia. What the company was to furnish and what the appellee was to get from it for the price he was to pay are explicitly stated in the agreement between them, the last clause of which is, "And it is further agreed that this instrument evidences the whole contract under which the said engine is received by the undersigned." What the appellee was to get were known and definitely described things, and the terms and conditions under which he was to get them were definitely set forth in the agreement. The appellant supplied and installed the engines and dynamos upon foundations which it built. On March 23, 1905, it started the engines, when it was immediately found that the noise, vibration and shock were so great that they rendered appellee's building and the premises immediately to the south practically uninhabitable. The rest, sleep and comfort of the occupants of appellee's house were interfered with and the owner of the adjoining premises threatened to apply for an injunction to abate the nuisance from which he suffered, for the vibration caused dishes and plates to rattle upon the table in the dining room and on the ranges in the kitchen, and the floors of his sitting room and library shook, so as to render the use of the same impossible. Some efforts were made, extending over a period of a month, to correct the evil, the existence of which the company's superintendent admitted, but these efforts were abandoned and shortly afterwards this suit was brought. To the defense that the appellee attempted to make, that there had been a parol contemporaneous agreement amounting to a guaranty that there would be no noise, vibration or shock, the answer of the appellant was that there was no such condition in the agreement, which, according to its express terms, evidenced the whole contract between them.

It is inconceivable that the appellee would have contracted with the appellant for the installation of a plant that would be so utterly useless to him as that furnished, and it is equally so that the appellant would have at-

tempted to sell it to him; but the contention of the latter is that, as the appellee got what it contracted to give him, he must pay. To his defense of the parol contemporaneous agreement reply is made that it was not so nominated in the bond. It is to be conceded that the appellant has the right to stand upon its contract, but before it is to be permitted to recover it is bound to show that it has performed the same in all respects. Upon this issue alone the case should have gone to the jury, and, if the learned trial judge had consistently adhered to his instruction to them in his charge and to his answer to plaintiff's third point, that they were not to consider the alleged contemporaneous agreement, but the written one alone as the contract between the parties, and that if the plaintiff furnished and erected the gas engines, generators, switch board, etc., as provided by the written contract, their verdict should be in its favor, the record would be free from error, for there is no assignment to the admission or rejection of evidence.

One of the covenants of the appellant was to lay a necessary concrete foundation for the plant. The superintendent of the company, with whom all negotiations were had, admitted on the trial that this concrete foundation should have extended, according to the rules under which his company worked, sixty inches below the floor level. It was proven by a number of witnesses that the foundation went below that level only about twenty-two inches; that it was not only not laid to the necessary depth, but did not go down to solid earth; that it rested partly on loose ashes, on an old, abandoned brick wall and on several old, abandoned drain pipes, and, according to the testimony of a number of witnesses, the effect on the building in which the engines were installed and upon that adjoining it, resulting from this defective foundation, would be to send the excessive vibrations and shocks through both. The real issue, and the only one, therefore, as counsel for appellee properly state it in their statement of the question involved, was as to the

laying of the necessary concrete foundation, for if, as a result of its not being properly laid, the engines made the great and unusual noises, vibrations and shocks referred to both in appellee's house and in that adjoining, the plaintiff ought not to be allowed to recover. Instead of consistently following the proper instructions to which we have referred and his correct answer to defendant's fourth point, the learned trial judge told the jury that they might determine whether, as a fact, upon the proofs offered, the noise, vibrations and shock were undue and more than a reasonable man in the position of the appellee should have anticipated and more than the appellant might have claimed as ordinary and reasonable, and, if they should so find, a defense was made out. This was error, for if the appellant had in all respects performed its contract with the appellee, and he had obtained what his contract called for, payment was not to be avoided simply because there might have been undue noise, vibration and shock. Though in his general charge the trial judge had told the jury that they were to disregard entirely the parol contemporaneous agreement, in answering the tenth point submitted by the defendant he instructed them that, if they believed the appellee was without skill or experience in the matter of installing engines and dynamos, and relied upon the statements and representations made by the appellant's agent as to their freedom from noise, vibration and shock, so as to make the plant fit and suitable for installation and operation in an apartment, and the engines installed and operated produced unusual noise, vibration and shock, so as to be unsuitable for use in the house, the plaintiff could not recover. The case thus went to the jury under certain instructions that were contradictory of correct ones. They may have followed the incorrect instructions and denied a recovery merely on the ground that there had been undue vibration and shock, or they may have concluded that no recovery could be had in view of the representation by plaintiff as to the freedom of the plant

from vibration and shock. No one can tell which instructions were followed, and the judgment must, therefore, be reversed: Gearing v. Lacher, 146 Pa. 397; Wolf v. Wolf, 158 Pa. 621; Baker v. Hagey, 177 Pa. 128.

The third and sixth assignments of error are sustained and the judgment is reversed with a venire facias de novo.