DRAKE *v.* INDUSTRIAL WORKS.

1. MASTER AND SERVANT — EMERY WHEELS — BLOWERS — SAFE-
GUARDS FOR MACHINERY—STATUTES.

Under Act No. 285, Pub. Acts 1909 (2 How. Stat. [2d Ed.] §
4035), providing for the installation of fans or blowers in
workshops using wheels partly of emery, or buffing wheels,
or emery belts, amending Act No. 111, Pub. Acts 1893, and
Act No. 202, Pub. Acts 1899, emery wheels, solid or "of any
description" are included within the terms of the statute.[1]
McALVAY, BROOKE, and OSTRANDER, JJ., dissenting.

2. STATUTORY CONSTRUCTION—RELATIVE WORDS AND PHRASES.

Relative and qualifying words and phrases, where no indication
to the contrary appears, refer solely to the last antecedent, in
the interpretation and construction of statutes.

3. MASTER AND SERVANT — CONTRIBUTORY NEGLIGENCE — TOOL
GRINDING.

An employé, who had only worked a few days at chipping and
smoothing up rough castings, and whose eye was injured
while grinding his tools on an emery wheel, was not charge-
able with contributory negligence, as matter of law, for fail-
ing to wear goggles that were furnished on request by the
master, when it appeared that the person who instructed
plaintiff in the operation of the wheel, did not advise him to
wear goggles, and that a sign posted in the factory warning
employés to wear that means of protection was so covered
with dust as to be difficult to read, and that plaintiff had not
seen it: other employés working without goggles.

4. SAME—EXTENT OF INJURIES—EVIDENCE—DEFECT IN UNINJURED
EYE.

Plaintiff, being entitled to recover for direct and natural con-
sequences of his injuries, should have been allowed to show
that his uninjured eye was defective, and that the injury
practically destroyed his vision.

[1] On the question what is comprehended in expression "machin-
ery of every description," in statutes imposing duty on master as to
placing guards, see note in 30 L. R. A. (N. S.) 36. And for common
practice as the measure of master's duty to guard machinery, see
note in 16 L. R. A. (N. S.) 140.

Error to Bay; Collins, J. Submitted June 13, 1911.
(Docket No. 41.)   Decided April 8, 1913.

Case by Herbert B. Drake against the Industrial Works
for personal injuries.  A judgment for defendant on a
verdict directed by the court is reviewed by plaintiff on
writ of error.   Reversed.

*Hall, De Foe & Henry*, for appellant.

*Gillett & Clark*, for appellee.

BIRD, J.  The defendant is a manufacturer of locomo-
tive cranes in Bay City, and on the 26th day of July, 1909,
the plaintiff was in its employ, working as a chipper.
His work was that of smoothing up the rough castings
with a chisel.  While grinding one of his chisels on an
emery wheel, a particle of dust or steel was thrown off
and into his left eye, resulting in a permanent injury.

The negligence counted upon by the plaintiff was the
failure of the defendant to provide and equip the emery
wheel with a fan or blower to carry away the dust or
particles which might be thrown therefrom, in compliance
with Act No. 285 of the Public Acts of 1909.

When the testimony was completed, the trial court was
of the opinion that solid emery wheels, such as the one in
question, did not come within the provisions of the act,
and therefore directed the jury to return a verdict for the
defendant.  This action upon the part of the trial court is
alleged as error by the plaintiff.

The legislation involved in this case first made its ap-
pearance in the legislative session of 1887, under the title
"An act to provide for blowers in establishments where
emery wheels or emery belts are used."  Section 1 pro-
vided, in part, as follows:

"SECTION 1. That all factories and workshops where
emery wheels or emery belts, of any description, are
used, either solid emery, leather, leather-covered, felt,
canvas, paper, or wheels rolled in emery or corundum,

shall be provided with blowers," etc. Act No. 136, Pub. Acts 1887.

Section 1 was amended in 1893, under the same title, to read:

"Section 1. That all persons, companies, or corporations operating any factory or workshop, where emery wheels or emery belts of any description are used, either solid emery, leather, leather covered, felt, canvas, linen, paper, cotton, or wheels or belts rolled or coated with emery or corundum, or cotton wheels used as buffs, shall provide the same with blowers," etc. Act No. 111, Pub. Acts 1893.

Both the title and section 1 were re-enacted in 1899 in the following form:

"An act to provide fans or blowers in all workshops or establishments where wheels composed partly of emery or buffing wheels or emery belts are used.

"Section 1. That all persons, companies or corporations, operating any factory or workshop, where wheels or emery belts of any description are in general use, either leather, leather-covered, felt, canvas, paper, cotton, or wheels or belts rolled or coated with emery or corundum, or cotton wheels used as buffs, shall provide the same with fans or blowers, or similar apparatus, when ordered by the commissioner of labor, which shall be placed in such a position or manner as to protect the person or persons using the same from the particles of dust produced and caused thereby, and to carry away the dust arising from, or thrown off by, such wheels or belts, while in operation, directly to the outside of the building or to some other receptacle placed so as to receive and confine such dust, and the same shall be placed in such factory or workshop within three months after this act shall take effect, in the manner and according to the directions and specifications as herein, in this act set forth: *Provided,* that grinding machines upon which water is used at the point of grinding contact shall be exempt from the conditions of this act: *And provided further,* that this act shall not apply to solid emery wheels used in saw-mills or planing-mills or other wood-working establishments." Act No. 202, Pub. Acts 1899.

In 1909 the labor laws of the State were consolidated,

and the foregoing section, with others of the 1899 law, were included therein, without material change.   Act No. 285, Pub. Acts 1909.   See 2 How. Stat. [2d Ed.] § 4035.

It is contended by the defendant that the omission of the word "emery" before the word "wheel" and the omission of the words "solid emery" after the word "either," in the act of 1899 were made for the deliberate purpose of eliminating solid emery wheels from the provisions of the act.

In construing the act the purpose of it may be considered.   The idea behind the legislation was the protection, external as well as internal, of the employé, from the injurious effects of the dust thrown from such apparatus, as is mentioned in the statute.   If this be the reason for it, no good reason suggests itself why solid emery wheels should be exempted from the act, as the dust therefrom is quite as injurious as that thrown from the other apparatus specifically enumerated.

Another fact which makes against the defendant's construction is the last proviso of section 1, which was added by the legislature of 1899, the one which, it is claimed, purposely omitted "emery wheels" from the act.   This proviso reads—

"That this act shall not apply to solid emery wheels used in sawmills or planing-mills, or other wood-working establishments."

If the legislature of 1899 intended to eliminate "emery wheels" from the provisions of the act, it is extremely difficult to explain why it inserted this proviso.   The proviso can be accounted for only on the theory that the legislature supposed solid emery wheels were included within the general words of the act.

The question as to whether the phrase "of any description" refers to emery belts alone, or to both wheels and emery belts, is one which is not altogether clear.   If the general rule were followed, it would modify emery belts

only. Sutherland, in his work on Statutory Construction, lays down the rule in such cases as follows:

"Relative and qualifying words and phrases, grammatically and legally, where no contrary intention appears, refer solely to the last antecedent." Section 420.

We are of the opinion that a contrary intention does appear in this act, when its history, purpose, and context are considered, and that the phrase "of any description" refers to wheels as well as to emery belts. In view of these conclusions, we think the act should be construed so as to include solid emery wheels within its provisions.

The trial court was requested to direct a verdict for the defendant for other reasons than the one we have been considering, and, among them, the question of the contributory negligence of the plaintiff is raised. It is said that he should have worn goggles while grinding the chisels; that a sign posted in the shop informed the employés where the goggles could be obtained. The plaintiff's testimony shows that he never saw the sign; that other employés did not wear them when grinding chisels; and that when he was instructed by the foreman how to do the work nothing was said by him about goggles. It further appeared that the sign was dust-covered to the extent that it was difficult to read. This showing by plaintiff, together with the fact that he had been employed at this work only a few days, made the question of his contributory negligence one for the jury.

The other questions raised in justification of the directed verdict have been examined, but we are of the opinion that they are without merit.

Error is assigned because of the refusal of the trial court to receive the following testimony:

"Plaintiff offers to prove the following several facts separately: That since birth he has been troubled with a congenital defect of his right eye, under which he has never had any power of vision therefrom, and that in consequence of the injury to his left eye sued for, and the impairment of vision of that eye, his total sight has been

practically destroyed.    This offer of proof is made for the sole purpose of showing the damages sustained by him by reason of the injury to his left eye, no claim being made for an injury to his right eye; it being the contention of plaintiff that this proof should be received under instructions which will confine a right of recovery to the damages springing from the injury to his left eye."

This offer presents a somewhat novel question, but I am persuaded that the proffered testimony was competent, and should have been received.    It is, of course, clear that no recovery could be had for the loss of the right eye; but plaintiff was entitled to recover that of which he had been deprived as the direct and natural consequence of the injury to his left eye (*Huizega* v. *Lumber Co.*, 51 Mich. 272 [16 N. W. 643]), and one of the consequences was his lessened ability to labor.    If, with the aid of only one eye, he was able to labor and earn a living before the injury, and he has been deprived of that ability by the wrongful act of the defendant, he is entitled to recover for such loss.    To measure this loss, it is competent to compare the man before the injury with the man after the injury.    If, by reason of ill health or defect, he was able to labor only half of the time before the injury, his loss would be only half of what it would be had he been well, sound, and able to work all of the time.

The point is made by defendant that—

"If such evidence were admitted the average juror would be disposed to assess damages for the loss of two eyes instead of one."

Plaintiff's legal right must not be measured by our fears of what the jury will do.    We must assume that the jury will do their duty and follow the instructions given them by the trial court.    The fact that it would be difficult for a jury to separate the damages occasioned by defendant from those arising by reason of a natural defect, and the fear that jurors might allow their sympathies to influence their verdict, furnish no adequate rea-

son for making an exception to the general rule of damages usually applied in such cases. We are of the opinion that the testimony should have been received. *Baker* v. *Hagey*, 177 Pa. 128 (35 Atl. 705, 55 Am. St. Rep. 712). See *Stewart* v. *City of Ripon*, 38 Wis. 584; *Brown* v. *Railway Co.*, 54 Wis. 342 (11 N. W. 356, 911, 41 Am. Rep. 41); *McNamara* v. *Village of Clintonville*, 62 Wis. 207 (22 N. W. 472, 51 Am. Rep. 722).

The judgment is reversed and a new trial granted.

STEERE, C. J., and MOORE, KUHN, and STONE, JJ., concurred with BIRD, J.

OSTRANDER, J. (*dissenting*). In this case the court is called upon, as it so often is, to determine the meaning of a rather incoherent statute. Counsel have disagreed as to its meaning, and have in voluminous briefs and in oral argument elaborated their respective contentions. The trial judge, painstaking and careful, has reached a conclusion upon the subject precisely opposed to the one stated in the opinion of Mr. Justice BIRD. There is a consideration to which counsel have given some weight, one which seems to me to be of large importance, which supports the ruling of the trial court, in view of which the various provisions of the statute take on a meaning which otherwise, perhaps, they would not have. The consideration to which I refer is this: That it is apparent from the history of the various acts which were finally consolidated and put together to make up Act No. 285 of the Public Acts of 1909 that the legislature had two distinct purposes in view. One of them was to provide, in the interest of the health of those employed in factories where emery wheels or belts were in general use, in whatever form, that the dust arising from such use should be removed from the factory, purifying the air, and protecting the head, throat, and lungs of the employés. The other was that in factories where emery wheels were not in general use, but where they were in use, and where grindstones were in use, exhaust fans

should be provided for the purpose of carrying off dust, whenever the factory inspector thought it was necessary. The idea finds expression in section 16 of the act of 1909, the provisions of which were relied upon by the trial court, but are not mentioned in the opinion of my Brother BIRD. The consolidation of separate acts brought these provisions into one act. I call attention to the language of the provisos at the end of section 27, and to the fact that they do not in terms qualify the matter of the section, but broadly provide for exemptions from the *act* and its provisions and conditions. It is matter of common knowledge that emery wheels and belts are used in metal-working and in wood-working factories for buffing and smoothing metal and for smoothing and polishing wood. In this line of work they are in general use, and they give off in use large quantities of particles of fine dust, which may be inhaled. It is matter of common knowledge that emery wheels and grindstones are employed in most establishments where tools are employed and have to be sharpened, and there may be and are factories where, though not in general use for that purpose, emery wheels and belts are in occasional use for polishing metals and wood. I do not think it was the intention of the legislature that hoods and exhaust fans should in all cases be installed in factories where emery wheels and grindstones are used simply to sharpen tools. I do think that the legislature wisely provided for the condition of occasional use, which would produce the same effect as general use, leaving it to the factory inspector to determine whether such use as was made demanded the installation of an exhaust fan to carry off the dust. I do not overlook the arguments which are made, based upon grammatical construction of the language the legislature employed. I am impressed that the consideration which I have stated makes plain language which otherwise would be ambiguous, and aids construction.

The defendant called the commissioner of labor of the State as a witness, who gave the following testimony:

"I know what a buffing wheel is. A buffing wheel is in use continually from the time they start to work until the factory closes, and it is a polishing wheel that grinds fine dust. They polish on it any kind of metal. They make smooth polished—they first buff off the rough of the casting with a coarse wheel, and then trim it up smooth on a finer buffing wheel.

"*Q.* What kind of dust do they make with a buffing wheel, as to whether it is injurious to the lungs or dangerous to the eyes?

"*A.* The dust from a buffing wheel is fine dust. From a grinding wheel it is coarser dust. We have to provide for a blower and suction pipe to take care of the dust from a buffing wheel."

He was asked the following question:

"*Q.* I show you Exhibit 2 in this case, which is a photograph of certain emery wheels in the clutch room of the Industrial Works, where plaintiff was working when he was hurt, and plaintiff has testified that he was hurt while working upon one of those wheels. It appears in this case that those wheels were solid emery wheels, and were used to sharpen the cold chisels which the men used in chipping steel castings. The plaintiff testified that he would be about 55 minutes out of each hour engaged in chipping, and the other 5 minutes sharpening his tools on the wheel; that there was a keg of water standing by it, which appears in the photograph, into which he would dip his chisel as it became overheated. The wheel, from the testimony, was revolving, as I recall it, some six or seven hundred revolutions a minute. I ask you what is the plan and practice of your department as to whether you have treated and applied sections 27 to 30, inclusive, of the factory act to wheels of that nature and description."

The answer was excluded. And the following:

"*Q.* What do they grind such knives on in planing mills?"

The question being objected to, the court said:

"The statute specifically excepts planing mills. Is it the object to show that they used solid emery wheels?"

To which counsel for defendant replied:

"That they used solid emery wheels, and used them on it and in exactly the same way they use them in this workshop, and the sparks fly in the same way, and the dangers are indentical."

The testimony was excluded. In my opinion, the testimony of the commissioner of labor might very properly have been received. His opinion as to the proper construction and as to the force and effect of the statute would not be controlling, but, these matters being in doubt, the practical construction of the act by the department charged with its enforcement would be, and ought to be, persuasive of its proper construction. It became immaterial that this testimony was not received because the court reached a conclusion, along other lines, that plaintiff could not, in any event, recover—a conclusion based, however, upon an attempted interpretation and construction of the language employed by the legislature. Aided, as I think it is, by reasons which I have stated, the construction of the act adopted by the circuit judge is the correct one, and I adopt it as a part of this opinion and herewith set it out:

"On the conclusions that I have reached, I shall make a somewhat summary disposition of this case. At the close of the plaintiff's testimony the defendant made a motion, as it is called in practice, to take the case from the jury on certain legal grounds.

"One of the grounds urged by the defendant was that the provisions of the act counted on in this case did not apply to a solid emery wheel. The argument was at some length upon that point. I heard the argument of counsel on both sides, and there were other questions argued, but at that time I inclined to the opinion that the statutory provisions sued upon did apply to solid emery wheels. As the case progressed, counsel handed up requests just before they argued the case to the jury, and I re-examined the question, and I have come to the conclusion and feel strongly convinced of the correctness of my opinion that the statutory provisions sued and relied upon by the plaintiff in this case do not apply to solid emery wheels.

"I think, under the circumstances, it is fair to counsel and to you that I give a little explanation, in order that

the grounds upon which my action is based may be understood.    There is a statute in this State, passed at the last session of the legislature, being Act No. 285 of the Public Acts of 1909, entitled 'An act to provide for the creation of a department of labor, to prescribe its powers and duties, to regulate the employment of labor, to make an appropriation for the maintenance of such department, and to prescribe penalties for the violation of this act.'    That act contained sections numbered 27 to 30, inclusive, and these sections contain the provisions which, it is contended, sustain plaintiff's contention in this case.    Section 27, which is the important provision, reads as follows:

" 'All persons, companies or corporations operating any factory or workshop, where wheels or emery belts of any description are in general use, either leather, leather-covered, felt, canvas, paper, cotton, or wheels or belts rolled or coated with emery or corundum, or cotton wheels used as buffs, shall provide the same with fans or blowers, or similar apparatus, which shall be placed in such a position or manner as to protect the person or persons using the same from the particles of dust produced and caused thereby, and to carry the dust arising from or thrown off by such wheels or belts while in operation directly to the outside of the building or to some other receptacle placed so as to receive and confine such dust: *Provided*, that grinding machines upon which water is used at the point of grinding contact shall be exempt from the conditions of this act: *Provided further*, that this act shall not apply to solid emery wheels used in saw mills or planing mills or other wood-working establishments.'

" Then section 28 provides, as to the same wheels, that there shall be applied a hood or hopper.

" Now, as I think, as a grammatical question, as a question of language alone, solid emery wheels are excluded from this definition of wheels.    Reading the first part of section 27, which bears upon this question, where wheels or emery belts of any description are in general use, either leather, leather-covered, felt, canvas, paper, cotton, it appears to me, as a matter of grammatical construction and plain language, that the word 'wheel' is qualified by the words which follow, viz., 'leather,' 'leather-covered,' and 'felt,' etc., referring it to that class of wheels, instead of solid emery wheels.    Now, this contention, if correct, is an effectual bar to the plaintiff's recovery in this case, because the plaintiff's recovery is based upon this provision of the statute, and the question all

turns on whether or not solid emery wheels come within this provision. Looking at the language alone, it seems clear to me that the wheels referred to there exclude solid emery wheels.

"But further than that, a history of the sections in question seems to me to amount to a demonstration of the correctness of my opinion. I put it in that way, because I have reached a solid conviction of the correctness of my opinion. Of course, whether it is right or wrong is a question for the Supreme Court.

"Now, this Act No. 285 is an act consisting of 55 sections, and brings together quite a number of different acts upon the subject of protection to laborers in their employment. It brings in the acts in respect to the protection of workmen and brings in other provisions, and it organizes a department of labor. As a legal point there may be some question as to whether or not the act is unconstitutional by reason of different provisions and purposes of the act not being included in the title. If that would be so, and I speak of that only in passing, that would still leave Act No. 202 of the Session Laws of 1899 in force, and that observation, if correct, would not change the ruling in this case.

"Now, looking at this act again, section 16 of the act says:

"'Exhaust fans shall be provided for the purpose of carrying off dust from emery wheels and grindstones and dust-creating machinery, wherever deemed necessary by the factory inspector.'

"That provision expressly mentions emery wheels, and lays down the rule under which emery wheels may be protected by the order of the factory inspector. Taking the law as a whole, it would seem that the specific provision which covers the point is the one that should govern, and comparing that section and the other section and the conviction is strengthened that solid emery wheels are not provided for in sections 27 to 30, read to you a few minutes ago.

"But these sections 27 to 30 have a separate history, which I bring to your notice, and which I think is corroborative of the conclusion reached. We first start in the year 1887 with an act consisting of three sections, which is entitled 'An act to provide for blowers in establishments where emery wheels or emery belts are used,' and it provides that in all factories and workshops where either solid

emery or other kinds of wheels—' solid emery wheels' are referred to, and 'said emery wheels' are referred to, showing that that statute provided and applied to solid emery wheels. That act was amended in 1893, or sections 1 and 2 were, and the words 'emery wheels' and 'solid emery wheels,' in connection with the other wheels, are described and referred to.

"Following this, in 1899, the legislature passed an act in which it provided for 'fans or blowers in all workshops or establishments where wheels composed partly of emery or buffing wheels or emery belts are used.' The title of the act omits emery wheels, and when you come into the body of the act, which consists of six sections, we find 'solid emery wheels' are omitted. Then this act was intended to exclude emery wheels, and makes provisions for the use of fans or blowers in those cases where wheels composed partly of emery or buffing wheels or emery belts were used. Now, this act of 1899 is brought into the act of 1909, and sections 1, 2, 3, and 4 of the act of 1899 become sections 27, 28, 29, and 30 of the act of 1909.

"Section 16 of the act of 1909 provided for the protection, whenever it may be deemed necessary by the factory inspector, of solid emery wheels, such as the wheel in this case. Sections 27 to 30 provide for the other class of wheels, burnishing wheels, and wheels or belts of leather, leather-covered, felt, canvas, paper, etc., are used. So that the conclusion reached is that in this case the wheel in question in this suit is a solid emery wheel, and it is governed in its use by provisions of section 16, under which dust protection was only to be provided when required by the commissioner of labor. The suit counts or claims on the other sections 27 to 30, which do not provide for the protection of solid emery wheels. As a matter of law, then, the plaintiff cannot recover in this case, based on the fact that the solid emery wheel in this case was not protected. There is nothing showing that the labor commissioner has acted upon it, and the provisions of sections 27 to 30 are claimed under. That leaves the plaintiff without any cause of action in court. The law disposed of the case, and leaves it so that it is my duty to instruct you to return a verdict for the defendant."

McAlvay and Brooke, JJ., concurred with Ostrander, J.